DAVID HOOPER, Appellant, v. DAVID A. ELY, Respondent.

1. *County Courts — Powers — County warrants — Absconding treasurer.*— Although a County Court is endowed with large discretion in the management of its affairs, it has no authority to order the issue of a county warrant for amounts of money expended by the sureties of a defaulting and absconding county treasurer in bringing him back, even though they obtained from him a large proportion of the amount in arrears, where it further appears that the sureties were amply good for the deficit, and that there was no reason to suppose that he took with him any of the property of the county in specie. Such action of the court would not be in behalf of the county, but of the signers of the bond alone. And it would not affect their claim, that one of the judges had advised the step and assured them of his influence with the remaining judge to secure the issue of the warrant. Such a case would not be one of the injudicious exercise of a given power, but a naked assumption of power, in no wise granted, which it would be the duty of courts to check.

*Appeal from Sixth District Court.*

*Blair & Hillis*, for appellant.

*Ellison & Ellison*, for respondent.

The County Court of Adair county had authority to issue the warrant. (Boggs v. Caldwell & Co., 28 Mo. 586–8; 1 N. Y. Dig. 455, § 8; 34 Barb. 69–79; 21 How. 178; 12 Abb. Pr. 204–7; 2 Sandf. 460; State v. Cooper County Court, 17 Mo. 507; Campbell v. Polk County, 3 Iowa, 472; 18 Cal. 144.)

BLISS, Judge, delivered the opinion of the court.

The plaintiff, as a tax-payer of Adair county, obtained an injunction against the treasurer to restrain him from paying a certain county warrant, upon the ground that it was issued without authority of law, and also asked for an order upon defendant Ely, the holder, to bring it into court to be canceled. The injunction was finally dissolved, and the judgment was affirmed by the District Court.

It appears that one Owenby, sheriff and collector of the county, had defaulted and absconded, and that defendant Ely and others, who were abundantly responsible, were upon his official bond. During a recess of the County Court, Ely proposed to one of the county judges to go after Owenby and bring him back, who advised him to do so, and said that he would use his influence with the other judges to make the county pay his expenses. Ely and one of his co-sureties pursued the defaulter, brought him back, and obtained indemnity for a large portion of their liability. They presented their claim to the County Court for expenses, etc., and were allowed the sum of $1,632.35, for which the warrant in controversy was drawn. Afterward, in a suit upon Owenby's bond, judgment was entered by consent for over $5,000, with a stay of execution for twelve months and an agreement that it might be discharged in county warrants. Defendants claim that it was part of the understanding that this particular warrant should be received in part payment; but it is clearly established that the county authorities did not so understand it,

Hooper v. Ely.

and that the probate judge, who had succeeded the old County Court, had already arranged with the county attorney to commence this proceeding.

We have only to inquire whether the County Court was authorized to allow the claim and order the warrant to be drawn. But little weight can be given to the encouragement given to Ely by the county judge before he left to pursue the defaulter. It could only go to the good faith of Ely, and could not of itself bind the county. If the County Court acted within the scope of its authority, the county is bound without it; if not, it is of no avail.

Had the court, then, a right to pay this bill? Counsel base the right upon its duty to audit claims and its power to control and manage the property of the county. The County Court, it is true, is authorized to audit and direct the payment of claims against the county; but they must be lawful claims. To allow any other, clearly transcends its powers, and its payment can be enjoined. The power to control and manage the real and personal property of the county must, it is true, involve the possession of a large discretion in such control and management. The exercise of that discretion may be wise or unwise, expenditures may be prudent or extravagant, yet so long as the court keeps within its authority, the warrants upon the treasury which it orders must be met. The Circuit Court can not control the exercise of a discretion vested by law in the county judges; and if, as in the case at bar, they are authorized to employ and pay sureties upon the official bonds of public officers, to bring back their absconding principals, or possess any general authority that would include that power, the particular mode of its exercise can not be questioned. But I am unable to see under what head such a grant of power can be classed. It is not seriously pretended that the absconding collector took with him any property in specie belonging to the county, to be recovered by his pursuers, nor that his sureties were not abundantly able to meet his cash liabilities. It may be admitted that if the liability had not been properly secured to the county, and there was a reasonable prospect of obtaining for the county what was actually obtained by the sureties, the County Court, as an incident to its power spoken of, and

to its duty to enforce settlements with collectors, might incur reasonable expense in the pursuit of the defaulter. But in the case under consideration the county authorities did not act for the county, but for the signers of the bond alone.

The pursuers were not public officers; they obtained nothing for the county, although they did for themselves. No reward even was offered, or contract made; but after the sureties had done what they alone were interested in having done, by which they obtained a large indemnity for themselves, the county volunteered to pay the expense.

The statement of one of the judges, that he thought the defaulter, if brought back, might disclose something useful to the county in relation to its burnt records, is altogether too loose and indefinite an expectation upon which to found a public contract, even if one had been made in advance; and it does not appear that when the appropriation was made he had anything to show, or that any attempt even had been made to learn anything from him. The whole record plainly shows that the allowance was a mere contrivance to lessen the liability of the bondsmen, and, as the County Court could not abate it directly, this indirection does not validate their action.

This is not a case of an injudicious exercise of a given power, but is a naked assumption of power which it is our duty to check; and the judgments of the courts below are reversed and the cause remanded, with directions to the Circuit Court to make the injunction perpetual, and direct the holder of the warrant to bring it into court to be canceled. The other judges concur.