JOHN A. LONG and others v. THE COMMISSIONERS OF RICH-
MOND COUNTY.

*Taxation -- County Commissioners -- Duties and Powers -- Contract*
*by County.*

1. Under the statute (Bat. Rev., ch. 27, § 8,) there is no grade among
   the duties and powers of County Commissioners, and no preference
   is given to one over another.
2. A Court has no power to interfere with the domestic administration of
   the affairs of a County so long as the Board of Commissioners act *infra*
   *vires; Therefore*, where it was alleged that a Board of Commissioners
   had not levied a sufficient tax to defray the ordinary expenses of the
   County, including the support of the poor, on account of the levy of a
   tax to pay for repairing the Court House, *Held* to be no ground for in-
   terference by the Courts.
3. A tax levied professedly and improperly for one purpose can be col-
   lected and applied to any other legitimate purpose.
4. It is not fraudulent for a Board of County Commissioners to superadd
   their personal credit to the credit of the County in a contract concern-
   ing the necessary expenses of the County.

INJUNCTION, heard at Fall Term, 1876, of RICHMOND Su-
perior Court, before *Furches, J.*

The complaint and affidavit of the plaintiff, which were
heard before Judge Buxton, at Chambers on the 2 August,
1876, alleged, among other things, that the defendants had
made the following levy of taxes for the current year, viz;

Special tax for Rail Road purposes; 30 cents on the $100
valuation and 60 cents on the poll.

For County purposes; 30 cents on the $100 and 60 cents
on the poll; and ¾ of one per cent on income.

. For Township purposes; 5 cents on the $100 valuation.

Special tax for repairs on Court House; 10 cents on the
$100 valuation and 20 cents on the poll.

18

That including the State tax (which was 38 cents on the $100 and one 20-100 dollars on the poll) the total taxes levied were one 13-100 dollars on the $100 valuation of property and two 60-100 dollars on the poll.

Plaintiffs alleged that the taxes were in excess of the constitutional limitation and that defendants were proceeding to collect them, and asked that they be enjoined from collecting the special tax for repairs on the Court House. Plaintiffs admitted the tax levied for railroad purposes to be valid. His Honor ordered the defendants to appear and show cause at the ensuing Fall Term of the Court why they should not reform the assessment of County taxes by striking out the tax levied for repairs on Court House as being in excess of the constitutional limitation and in the meantime restrained them from proceeding in its collection.

On the 26th August, the defendants reformed the tax levy by striking out the tax for Township purposes from 30 cents on the $100 to 16⅔, but retained the tax levied for repairs on the Court House. At the regular Term the defendants answered, setting out the facts as above and asked that they be allowed to proceed in the collection of the taxes. The plaintiffs resisted and alleged fraudulent motives in passing the order reforming the tax list; that defendants had made themselves personally liable for the Court House repairs and on that account retained the tax levied for that purpose and also that the ordinary County expenses would require more than would be raised by the reduced taxation for that purpose.

His Honor held that the defendants had the right to reform the tax levy; that as to the alleged fraud it was not such as the Court could consider; that the levy of 26⅔ cents must be sustained being for County purposes including the repairs on the Court House of the necessity for which the defendants were judges; that the levy of 20 cents on the poll for repairs could not be sustained on the ground that

that the poll tax must be appropriated for purposes of education and the support of the poor.

Thereupon the Court ordered that the restraining order theretofore made, be modified so as to restrain the collection of the poll tax and for repairs on the Court House.

From this order both the plaintiffs and defendants appealed.

*Mr. John D. Shaw* for the plaintiffs, cited, *Allen* v. *Pearce* 6 Jones, Eq. 309; *Carter* v. *Hoke* 64 N. C. 348; *Lowe* v. *Com'rs.* 70 N. C 532; *Blossom* v *Van Amringe*, Phil. Eq. 133; *Key* v. *Dobson*, Ibid 170; *Howes* v. *Mauney*, 66 N. C. 218; *French* v. *Com'rs*, 74 N. C. 698; *Tucker* v. *City of Raleigh*, 75 N. C. 271-2.

It is a general principle that all transactions can be avoided for fraud, and there is nothing to take this out of the general rule.

*Messrs. Platt D. Walker* and *J. N. Staples* for the defendants, cited, *Brodnax* v. *Groom*, 64 N. C. 244; *Holden* v. *Univ. R. R. Co.* 63 N. C. 410; *Simmons* v. *Webb*, 66 N. C. 336; *Haughton* v. *Com'rs.* 70 N. C. 466; *Brothers* v. *Com'rs.* 70 N. C. 726; *Uzzell* v. *Com'rs*, 70 N. C. 567; *Mitchell* v. *School Com.* 71 N. C. 400; *Wilson* v. *City of Charlotte*, 74 N. C. 748; *Street* v. *Com'rs.* 70 N. C. 644. Plaintiffs do not show wherein fraud consists, but charge it in general terms, *Mitchell* v. *Com'rs.* 74 N. C. 487.

The counsel for both parties also referred to the provisions of the Constitution and Acts of Assembly, regulating the manner of collecting taxes and the purposes to which they should be applied.

RODMAN, J. It is admitted by both parties that the original tax levy was excessive and *ultra vires* and that the plaintiffs were entitled to have the collection of it enjoined as to the excess.

The prayer of the complaint was to enjoin the collection of that part of the tax which it appeared was intended to pay for certain repairs on the Court House of the County, being 10 cents on the $100 valuation of property and 20 cents on the poll. *Buxton, J.*, granted a restraining order limited to this tax and permitting the collection of the other taxes. Afterwards and before the next term of the Superior Court of Richmond at which the defendants were ordered to appear and show cause, &c , the defendants revised the tax levy which was complained of. They reduced the tax for County purposes to 16⅔ cents on the $100 valuation of property and 60 cents on the poll and struck out the tax for Township purposes, but retained the tax for the repairs of the Court House which it was the prayer of the complaint to enjoin. They thus brought the total tax within the admittedly legal limit of 26⅔ cents on the valuation and 80 cents on the poll. At the next term of the Superior Court the plaintiffs moved to continue the injunction granted by *Buxton, J.*, to the hearing, and the defendants on the ground of the revision and reduction aforesaid, opposed the motion and moved to vacate the injunction, which was unnecessary, as it expired at the term, if not continued, by its own limitation. The Judge vacated the injunction except as to the tax of 20 cents on the poll for repairs of the Court House, as to which he continued it; and from this order the plaintiffs appealed to this Court.

They contend here that the original injunction should have been continued and make several objections to the conduct of the defendants in making the revision and to its legal effect upon the matter in controversy.

They object: 1st. That the revision of the tax levy was fraudulent, in this; that the Commissioners had become personally liable for the cost of the repairs on the Court House and that the tax for that purpose was not retained *bona fide* and in the honest exercise of their discretion in

repairing the public buildings of the County, but for the purpose of saving themselves harmless from the personal liability they had incurred. The Commissioners deny that they had by any agreement made themselves personally liable as charged and Mr. Carr the contractor for the repairs corroborates their denial. So that if they had made any contract of personal liability his affidavit discharges them so far as he is concerned.

But if they had become and continued to be sureties for the County for the payment of the cost of the repairs, we are at a loss to see wherein the fraud upon the tax payers consists or what principle of public policy is violated by their doing so. To repair a public building is within the class of necessary expenses for which the County Commissioners have power to tax within the constitutional limit. A contract made by them for such a purpose is valid and binds the County. If they can contract on better terms for the County by adding their personal credit to that of the County, we know of no reason why it should be unlawful. Besides, if such a contract was illegal as being contrary to public policy, it would be void and the plaintiff's argument would fail, as there would then be no personal liability.

The contract for the repairs appears from the affidavit of Carr to have been made in July, 1876, before the bringing of this action. No reason is shown why this contract was not binding on the County. An injunction to prevent the Commissioners from collecting the tax laid to enable the County to perform it would not annul the contract or exonerate the County from liability to damages for a breach of it. To retain this tax therefore by cutting down the others cannot be regarded as a fraudulent act on the part of the Commissioners, if by fraud is meant an act to their own advantage at the expense of their constituents. And we can conceive of no other legal meaning to be attached to the epithet fraudulent in this connection.

2nd. That the tax levied by the revised levy for County purposes other than the repair of the Court House, including the maintenance of the poor, the payment of jurors, the support of prisoners, &c., is manifestly insufficient for those purposes and the inadequacy will cause a serious and manifest damage to the County. That these objects are essential to the welfare of the County and more necessary than the repair of the Court House and that the Commissioners do not honestly and cannot legally cut down the tax necessary for these primary and essential objects in favor of one subordinate in its nature.

Whether the tax levied for County purposes as defined above will be adequate or not for those purposes we do not undertake to inquire.

The Act prescribing the duties and powers of County Commissioners, (Bat. Rev. ch. 27, § 8) enumerates among others. (sub. section 10) to repair the County buildings and raise the expense thereof by tax, (sub. section 13) to raise necessary highway moneys, (sub. section 11) to erect bridges, (sub. section 24) to provide by tax for the maintenance and well ordering of the poor, (ch. 89, § 9) to feed prisoners, (ch. 105, § 23) to pay jurors. To these others might be added but it is unnecessary for the purpose in view. All of these duties are obligatory. The expenses for each and all of them are of the class of necessary expenses. The statutes make no difference in grade or necessity among them. They give no preference to one of these objects over another. They leave to the representatives elected by the people of the County and being its local legislature to provide for them all if they can within their limited power of taxation, and if not to apportion the County revenue according to their discretion among the several objects, subject to this limitation only, that the proceeds of the poll tax shall be applied to education and the support of the poor alone.

It may happen that the County Commissioners with the limited amount at their command may not be able to provide adequately even in their own opinion for all these objects. It may be necessary to pare down the appropriations for one object in favor of another; for example, to economize in the maintenance of the poor in order to feed the prisoners in the jail, or to pay the jurors, or even to repair the Court House. That is matter of domestic administration, with which so long as the Commissioners act *infra vires*, no Court has the power to interfere. If the Superior Courts should undertake in any case to do so, they would undertake to supersede the local legislatures in their peculiar functions and would soon be called on to administer the domestic affairs of all the municipal corporations in the State.

When County Commissioners undertake to act *ultra vires* the Courts will restrain them. But when they act *infra vires* no Court can control their discretion. I will not undertake to say that no case can be conceived in which while acting *infra vires* the act may not be so manifestly fraudulent that a Court would not restrain it.

But I know of no precedent for such a power in the Courts and I cannot at present imagine such a case. And I here use the word fraudulent, not in the sense in which it seems to be used in the complaint and by the plaintiffs' counsel as applicable to an unwise or indiscreet act, but in its proper and legal sense as applicable to an *illegal* act, done for the benefit of the party to the injury of those whom he represents. Certainly in most if not in all of such cases, the *law* would furnish an adequate remedy and there would be no necessity for an application to the extraordinary powers of the Courts under their equitable jurisdiction. The present is not a case demanding the use of those powers. The appropriation of the County revenue which the defendants propose to make is within their discretion and the

Courts have no control over it.   If the Commissioners wilfully neglect any of their duties they become responsible to the criminal law.

3. It has been stated above that the Judge continued the injunction as to the tax of 20 cents on the poll, levied professedly for the repair of the Court House.   It is admitted that the Commissioners have no right to apply any portion of the County poll tax to pay for repairing public buildings. That tax is appropriated by the Constitution exclusively to education and the support of the poor, and the Judge would have been plainly right, if instead of enjoining the collection of the tax, he had enjoined its application to any but the purposes allowed by the Constitution.

The tax in question was not *ultra vires*.   It did not, when added to the poll tax for other County purposes, exceed the constitutional limit.   We know of no statute nor any rule of law or of public policy which prevents County Commissioners from applying a tax raised professedly for one purpose, to any other legitimate purpose.   There may perhaps be an exception where a tax is levied by a special authority from the Legislature, or upon the vote of the people, which would not otherwise be lawful.   We speak only of a tax levied under the ordinary powers of the Commissioners.   If they cannot apply the proceeds of such a tax otherwise than for its professed purpose, what would become of it if the purpose become inexpedient or impossible, or of the excess, if by chance an excess was left after the purpose was accomplished ? For example, after building a bridge.   There is no reason why the excess or the whole amount of the tax in the cases supposed should not be carried into the general County fund and applied to any legitimate purpose.   There is no law requiring the County Commissioners to state for what particular purpose any tax levied under their general powers, is levied, and such a statement if made is voluntary and not binding on them.   A contrary rule would be inconvenient.

We have endeavored to state and consider every material argument for the plaintiffs.

The injunction granted by *Buxton, J.*, is not continued. The injunction by the Judge of the Superior Court of Richmond is vacated.

The Commissioners of Richmond County are enjoined from applying any part of the poll tax levied by them to any other objects than education and the maintenance of the poor.

The plaintiffs will recover costs of the proceedings up to the term of Richmond Superior Court. The defendants will recover costs accrued subsequent to that term including those of this Court.

Case remanded to be proceeded in, &c.

Let this opinion be certified.

PER CURIAM.                    Judgment accordingly.

RODMAN, J. The opinion and judgment in this case on the appeal by plaintiffs, render unnecessary any further opinion on the appeal by defendants. The judgment is the same as on the plaintiffs' appeal.