### J. T. HOWARD v. STEPHEN SMITH ET AL.

No. 473.—Decided November 30, 1896.

Motion for Rehearing Overruled February 28, 1898.

**1. Cities—Municipal Indebtedness.**

A contractor agreed with a city for the paving of certain streets, the city to issue and deliver to him, six months after the completion of the work, its thirty year bonds for the amount due under its contract. Held, that since the improvement was not a matter of current expense and it did not appear that there was any fund, at the date of the contract, within the control of the city, out of which it was to be paid, such obligation was a debt within the meaning of the Constitution; and since no provision was made for interest and sinking fund at the date of such contract, it was void, and imposed no obligation upon the city to pay for the work.(Pp.14 to 16.)

**2. Same—Misapplying Funds.**

Any attempt by the officers or agents of the city to misapply its funds or credit to the satisfaction of such void claim would be a breach of trust, made a felony by art. 103, Penal Code. (P. 15.)

**3. Illegal Contract—Guaranty.**

The guaranty of a third party, intended to insure the compliance with such contract by the city, was tainted with the illegality of the original contract, and was void. (P. 16.)

QUESTIONS CERTIFIED from Court of Civil Appeals for Fifth District, in an appeal from Navarro County.

*F. M. Etheridge*, for appellant.—(From brief in Court of Civil Appeals).—Appellant can maintain no action against the city of Corsicana, in that no sinking fund was ever provided, and no debt was, therefore, ever created against said city in favor of appellant. Art. 11, sec. 5, Const., 1876; City of Terrell v. Dessaint, 71 Texas, 770; Biddle v. City of Terrell, 82 Texas, 335; Citizens' Bank v. City of Terrell, 78 Texas, 450: Bridge Co. v. San Antonio, 62 Fed. Rep., 882.

A promise cannot be collateral unless some one owes directly, and as no debt whatever was ever created by the city of Corsicana in favor of appellant, the promise of Allyn is original and not collateral.· 1 Brandt, Sur. and Guar., secs. 56, 57 and 58; 1 Reed, St. Frauds, sec. 100; 2 Par. Cont. (7th ed.), 4; Weare v. Sawyer, 44 N. H., 198; Winn v. Sandford, 145 Mass., 302; Kilbride v. Moss, 45 Pac. Rep., 812; Smyley v. Head, 45 Am. Dec., 750; Adams v. Hill, 16 Me., 215; Mease v. Wagner, 1 McCord, 395; Ledlow v. Becton, 36 Ala., 596; Mountstephen v. Lakeman, 7 H. L., 24; 8 Am. & Eng. Ency. Law, 675, 676; Brown v. Bank, 31 S. W. Rep., 216, 285; Burge, Suretyship, 6, 7;

Bason v. Hughart, 2 Texas, 480; Wagon Co. v. Maclure, L. R., 19, Ch. Div., 478.

The obligation of Allyn that the city of Corsicana should, six months after the completion of the work, issue and deliver to appellant its five per cent thirty-year bonds for the amount that should then be due him, must be construed to mean valid and legally issued bonds. Faulk v. Dashiell, 62 Texas, 646; Hueske v. Broussard, 55 Texas, 205; Tucker v. Streetman, 38 Texas, 74; Morgan v. Dibble, 29 Texas, 118; Thrall v. Newell, 19 Vt., 202; Young v. Cole, 3 Bing., 724; Smith v. McNair, 19 Kan., 330; Rogers v. Walsh, 12 Neb., 28; Remsen v. Graves, 41 N. Y., 475; Marshall v. Morgan, 58 Vt., 60; Presbury v. Morris, 18 Mo., 165; Anthony v. County of Jasper, 101 U. S., 693; Barlow v. Scott, 24 N. Y., 40; 2 Wharton, Contracts, sec. 654; 2 Par. Cont. (7th ed.), 632, 789; Utley v. Donaldson, 94 U. S. 29; Wing v. Glick, 56 Iowa, 473; 2 Wharton, Evidence, sec. 1249; Ryan v. Railway, 65 Texas, 16; Hunter v. Anthony, 80 Am. Dec., 334; Harris v. Miller, 6 Sawyer, 319; Gould v. Banks, 24 Am. Dec., 94; Hoffman v. Ins. Co., 88 Am. Dec., 346; 2 Benjamin, Sales, sec. 810; 2 Wharton, Contracts, sec. 560; Lawson, Contracts, sec. 57; Jones, Com. and Trade Cont., sec. 249; Jones v. George, 61 Texas, 345; Young v. Garrett, 18 S. W. Rep., 819.

The fact that on November 4, 1890, the time when Allyn contracted payment in five per cent thirty-year bonds of the city of Corsicana, the city of Corsicana, as was known to all the contracting parties, had exhausted her bond limit, did not render such contract impossible of performance, in that the work was to be thereafter done, and the bonds were not to be delivered until six months after the completion of the work, and in that, there being no natural impossibility in the thing, many contingencies might have occurred, intervening the date of the contract and six months after the final completion of the work, which would have rendered the issuance of five per cent thirty-year bonds by the city of Corsicana lawful and possible. 1 Waits Ac. & Def., 106; 7 Waits Ac. & Def., 126, 127, 128; Beebe v. Johnson, 19 Wend., 500; 2 Par., Cont. (7th ed.), 806; Railway v. Wood, 30 S. W. Rep., 859; Seeligson v. Lewis, 65 Texas, 215.

Allyn contracted that the city of Corsicana should, six months after the completion of the work, issue its five per cent thirty-year bonds and deliver to appellant for the amount that should then be due him, and if, at that time, the city of Corsicana was powerless to issue the bonds, or failed to issue and deliver them, then the option to discharge the obligation in bonds ceased and the obligation became an absolute moneyed demand, money being the primary element of the promise. 2 Par. Cont. (7th ed.), 791; Foundry v. Hovey, 21 Pick., 417; Pindar v. Upton, 44 N. H., 358; Jacquinet v. Boutron, 19 La. Ann., 30; Hitchcock v. Galveston, 96 U. S., 350; Baker v. Todd, 6 Texas, 273; Bummel v. Houston, 68 Texas, 10; 1 Wharton, Contracts, sec. 328; Babcock v. Goodrich, 47 Cal., 511; Fry, Spec. Perf., 395, 396.

"The court erred in not rendering judgment in favor of plaintiff against the defendant, Allyn, in that the undisputed evidence shows that plaintiff resumed and completed the pavement upon the faith of Allyn's promise; that the amount sued for is justly due him by reason of his performance of his part of the contract; that neither Allyn nor the city of Corsicana has ever delivered or tendered to plaintiff the bonds which Allyn obligated himself should be delivered to plaintiff." Chick v. Trevett, 20 Me., 462; Brown v. Ray, 51 Am. Dec., 379; 1 Par. Cont. (7th ed.), 459; Adams v. Hill, 16 Me., 218; Townsley v. Sumrall, 2 Pet., 182; Violett v. Patton, 5 Cranch., 142; Bason v. Hughart, 2 Texas, 479; Lane v. Scott, 57 Texas, 372.

*Ballew, Clark & Ballew*, for appellees.

*F. M. Etheridge* and *Dickson & Moroney*, for appellant, also filed, in the Supreme Court, a motion for rehearing, supported by brief and written argument. The motion was overruled, February 28, 1898. The following points were presented therein:

(1). The court erred in holding that when a city makes a contract for the construction of a public work, executory on both sides, and contemplating the future payment of money, or the future delivery of bonds, by the city, after the work is done and accepted, and not before, a debt is at once created, within the meaning of the Constitution, and the contract is void, unless a provision be then made for interest and sinking fund, and such provision, if made at any time thereafter, would be insufficient, though made before any actual indebtedness is in fact created.

(2). The court especially erred in so holding in the present case, because such holding is in direct conflict with the previous decisions of this court in Nolan County v. State, 83 Texas, 182; Biddle v. City of Terrell, 82 Texas, 335; and Citizens' Bank v. Terrell, 78 Texas, 450. These cases all hold expressly or by necessary implication that the date when the actual and absolute indebtedness is created, or attempted to be created, is the true date when it is necessary to make provision for interest and sinking fund, though such absolute indebtedness may arise out of a previous executory contract, in which no such provision was made. Such was the established construction placed by this court on the Constitution when the contract involved in this suit was made, upon which construction appellant relied and had a right to rely, and a contrary construction, if now placed on the Constitution, would be the making and enforcing of a law impairing the obligation of appellant's contract. Havemeyer v. Iowa County, 3 Wall., 294; Gelpcke v. Dubuque, 1 Wall., 175; Chicago v. Sheldon, 9 Wall., 50; Olcott v. Fond du Lac County, 16 Wall., 678; contra, Storrie v. Cortes, 38 S. W. Rep., 154.

(3). The court erred in holding that when a city makes or attempts to make a contract within the general scope of its charter powers, but

without observing all the formalities required by law, or in excess of its powers only because such powers have been previously exhausted, and such contract has been honestly made and honestly acted on, and the city has received benefits under it, the voluntary performance, so far as good conscience may require, of such contract by the city, or the voluntary adjustment, according to good conscience, of the equities arising therefrom, would be a breach of trust involving moral turpitude, and a felony under the laws of Texas, and the court erred in holding that the penal law has any application whatever to the case, and such holding is in conflict with numerous previous decisions of this court, adjusting such equities according to good conscience, which could not be adjusted between the parties by a court of law or equity, if such transactions were held to be tainted with positive illegality, actual fraud or were felonious in law. Waxahachie v. Brown, 67 Texas, 519; Citizens' Bank v. Terrell, 78 Texas, 450; Nolan County v. State, 83 Texas, 182; Hitchcock v. Galveston, 96 U. S., 341; and other cases cited in argument.

(4). Even if it be granted that the original contract was void as to the city, when made, it was only void as being in excess of its power; it was not tainted with positive illegality, fraud, or felony, under the principles stated and authorities cited in paragraph 3, and therefore, under universally accepted principles, the nominal surety would be bound as a principal, though the nominal principal be not bound, and the court erred in not so holding.   Yorkshire Railway Wagon Co. v. Maclure, L. R., 19, Ch. Div., 478, and other cases cited in argument.

(5). A provision for interest and sinking fund could be created after the contract was signed, and before any indebtedness had been actually incurred; and, though the bond limit had then been reached, if subsequently the existing bonded debt were reduced, or the taxable values increased, the bonds could be legally issued, under principles applied in Nolan County v. State, 83 Texas, 182, where, through subsequent changes of conditions, valid bonds in payment of a contract were issued which would have been invalid if issued when the contract was made; and it was therefore not impossible, at the date of such contract, that the city might be able to issue valid bonds in payment; and Allyn had a right to guarantee, and did guarantee, that this would be done, if, through the failure of cash, it should become necessary; and the court erred in not so holding.

(6). The court erred in holding that the contract between Howard and the City of Corsicana was void, in the sense that under no circumstances could it be voluntarily performed without the commission of a breach of trust by the officers of the city, because the contract expressly authorized the city to pay in cash, as the work progressed, and contemplated a credit only as an alternative mode of performance, and the city had the full legal right to pay for the work in cash, thereby creating no debt whatever, if it should have cash available for the purpose when payments became due, and this right clearly existed, though no sinking fund was created, and the bond limit had been reached, and though it

was not a matter of current expense. McNeil v. City of Waco, 33 S. W. Rep., 322.

(7). Inasmuch as the contract provided for alternative modes of performance by the city, the one cash, the other credit, the one lawful, though the other be held unlawful, the court will disregard the provision for the unlawful mode of performance (if it be unlawful), the same being distinctly separable, and will construe the contract as if it only provided for the lawful mode of performance. Hanauer v. Gray, 25 Ark., 350; 1 Parsons, Contracts, 457; Hitchcock v. Galveston, 96 U. S., 341; Treadwell v. Davis, 34 Cal., 601.

(8). Thus construed, we have a lawful contract, but a contract of possibly imperfect obligation, which the city could lawfully and properly comply with of its own volition, without permitting any debt to be incurred, and without the commission of any breach of trust or other violation of duty, if it should have cash resources properly applicable thereto, when payments should, from time to time, become due, but which it could not be compelled to comply with by the judgment of a court, if such judgment would result in fixing a debt upon the city, beyond its lawful limit, or without making, or having the power to make, sufficient provision for interest and sinking fund, or, in lieu thereof, other sufficient provision for immediate discharge of the debt.

(9). The contract thus being a lawful contract of possibly imperfect obligation, and the city having the right to comply with the contract, according to its terms, by paying cash as the work progressed and was accepted, without ever incurring a debt at all, it was lawful for Allyn to guarantee such performance by the city, though no sinking fund was expressly provided for, and the bond limit had been reached, since these considerations become material only when a debt is attempted to be created, and have no application whatever to cash transactions, present or contemplated, single or several in succession; and whether or not the city had or should have the cash was a risk Allyn assumed, and had a right to assume, and which Howard, as between himself and Allyn, did not assume, the object of requiring such guaranty being to avoid such risk.

(10). The fact noted by the court that "the improvement was not a matter of current expense," is wholly immaterial, and its consideration misleading, because such fact would be material only in reply to an attempt to fix a debt upon the city, either in excess of its charter limit, or with no provision for a sinking fund. But the validity of voluntary cash transactions, present or contemplated, is not affected by the consideration that they are not "ordinary current expenses," or by the absence of a sinking fund, or by the amount of the aggregate indebtedness of the city, the only proper inquiry in such cases being, whether or not the city's cash is being expended for a purpose authorized by the charter and the general law.

(11). It is also immaterial as well as erroneous in fact, that "it does not appear that there was any fund, at the date of the contract within

the control of the city, out of which it was to be paid," and the court's conclusion therefrom is misleading and erroneous because:

(a).  It does not appear that there was not such a fund available to pay the contractor, and, if there was not such a fund, the fact, if material, should be alleged and proved by the defendant, to show the invalidity of a written contract prima facie valid.  The court cannot assume a defense never pleaded or proved, especially where Allyn, and not the city, is the defendant, and he seeks to show the invalidity of his own contract.  Nolan County v. State, 83 Texas, 182, 199; Water and Gas Co. v. City of Cleburne, 1 Texas Civ. App., 580 (necessity for special exception).

(b).  Even if there was no such fund when the contract was made, it does not follow that there would be none when the occasions for paying it should from time to time arise, and, under the contract, each four hundred feet was to be a cash transaction when accepted, like the purchase of any commodity, to be paid for when accepted, and it was perfectly competent for Allyn to contract that such a fund would be in existence and available, if he saw fit to do so, although not a dollar may have been available at the time the contract was made; and such was the legal effect of his contract.

(c).  It does in fact appear that there was such a fund.  All the work done prior to Allyn's signing the contract was paid in cash.  There was paid in cash altogether $27,860.08.  It is not shown or charged that this was any misappropriation of cash.  It does not appear whether or not there was a sufficient and adequate fund, but it does appear that there were at least some available funds, lawfully applicable to the contract, which Howard never got.  The city had lawfully issued $30,000 street improvement bonds in contemplation of this contract, from which Howard appears to have realized only $15,909.67.  It does not appear how much other available funds the city had; it only appears that the city stopped paying, and elected to stand on its real or supposed technical rights, the identical contingency Allyn contracted against.

(12).  The court erred in holding (even if it be granted that the city's contract was unlawful in the sense that it would not be performed voluntarily without the commission of a breach of trust), that Allyn's contract "tended to bring about the doing of an unlawful thing" and was therefore void, because there is nothing tending to show that it was understood that Allyn would undertake to personally procure the performance of the contract by the city, or that he had the power to do so, or that the city would, for any reason, be more likely to perform the contract with Allyn's guaranty than it would without it, Allyn, in fact, only contracting to indemnify Howard on a contract perfectly valid so far as Howard was concerned.

The court, in substance, holds that the guaranty of the validity of any contract which is to be performed by a person acting in a representative or trust capacity, is void, since, if the original contract is valid, the guaranty is superfluous and inoperative, and, if invalid, the guaranty

would, if the court is correct, "tend to bring about the doing of an unlawful thing." · Such a proposition, is, we submit, plainly indefensible. (This question is exhaustively discussed in the recent case of Meyer v. Richards, 163 U. S., 385.)

(13). Whatever may be said of the city's agreement, there was nothing illegal, immoral, or contrary to public policy in Howard doing the work, nor was there anything illegal, immoral, or contrary to public policy for him to be paid for it. That he would be paid was the purpose, and absolutely the sole purpose of Allyn's guaranty. It was an original, not a collateral undertaking, made in the utmost good faith, with full knowledge of the facts, resting upon a sufficient, moral, and legal consideration, acted upon in good faith by Howard, and binding on Allyn, according to all rules of good faith, common honesty and morality, a violation of which can certainly not be part of the unwritten and hitherto undeclared public policy of the State. If there was any vice in the contract, it was not in the consideration, but only in a single alternative promise. This does not invalidate the contract. 1 Parsons ·on Contracts, 457 (star paging), and other cases cited above and in accompanying argument.

DENMAN, Associate Justice.—On the 26th day of June, 1890, the city of Corsicana and J. T. Howard entered into a written contract whereby Howard agreed to furnish all labor and material and pave certain streets of said city, and the latter agreed to pay him therefor a portion in cash, and for the balance to execute its notes in five equal installments, payable yearly, interest at eight per cent, reserving the right to pay all cash. No provision having been made for interest and sinking fund required by law, Howard, having concluded for that reason his contract was void, repudiated the same and so notified the city, there being nothing due him at that time.

After some negotiations the city and Howard entered into another contract, on the fourth day of November, 1890, whereby Howard agreed to do the work under the original contract, and the city agreed that it would carry out said original contract and, "at the expiration of six months after said work is completed, that the city shall issue five per cent thirty-year bonds, and deliver to the said Howard, for the amount then due the said Howard by notes or in cash on said contract." At the foot of this agreement the defendant Allyn signed the following: "I obligate myself that the above agreement will be faithfully carried out." It appears that no provision was made for interest or sinking fund by the city at the date of this contract, and before its execution the city had already incurred debts to the full amount permitted by law, which fact was known to all the parties thereto.

Howard paved the street in accordance with the terms of this contract, the work being completed on the 28th day of March, 1891, and, being unable to collect the balance of about $30,000 due for said work from the city, brought this suit against Allyn upon said guaranty. We

have stated only so much of the facts certified by the Court of Civil Appeals as we deem important to a disposition of the case under our view of the law.

The question certified by said court is: "Did the guaranty of the con-tract in which the city agreed to issue its bonds in payment for street improvements, which all the parties then knew it had no legal power to do, bind the guarantor to pay the debt for such street improvements which was agreed to be paid in such bonds of the city?"

The contract of November 4, 1890, if valid, imposed upon the city a pecuniary obligation, in that it thereby agreed to pay for the pavement, part in money and the balance by issuing and delivering its bonds within a given time, the failure to do which would, under settled rules of law, have entitled Howard to demand the entire sum in money; and since the improvement was not a matter of current expense and it does not appear that there was any fund, at the date of the contract, within the control of the city, out of which it was to be paid, such obligation was a debt within the meaning of the Constitution; and since no provision was made for interest and sinking fund at the date of such contract, it was void and imposed no obligation upon the city to pay for the work. McNeil v. City of Waco, 89 Texas, 83, and cases cited; Bassett v. City of El Paso, 88 Texas, 168; Board of Lake Co. v. Rollins, 130 U. S., 662; Millerstown v. Frederick, 114 Pa. St., 435; Crampton v. Zabriskie, 101 U. S., 601; Schumm v. Seymour, 24 N. J. Eq., 143; Mayor & Council of Baltimore v. Gill, 31 Md., 375; Brady v. Mayor, etc., of N. Y., 16 How. Pr., 433.

A city can only act through its accredited officers and agents. They are mere trustees of its funds and credit for the purpose of applying them to the specific purposes for which such funds were created or credit allowed by law, and any attempt by them to misapply such funds or credit to the satisfaction of a void claim is a breach of trust—such misapplication is not merely without authority but is a clear violation of official duty and unlawful. So fixed is the policy of the law to prevent such breaches of trust, that our statute declares it to be a felony for any officer of any county, city or town in this State, or any clerk or other person employed by such officer, to pay or deliver any money, property, or other thing of value belonging to such county, city or town, that may have come into his custody or possession, by virtue of his office or employment, to any person knowing that he is not entitled to receive it. Rev. Stats., Penal Code, art. 103.

Therefore, if it be conceded, as contended by Howard, that when the time arrived for the city to have issued and delivered its bonds it may, by reason of having retired some of its indebtedness or by increase in values, have done so without exceeding its limit, still such action on the part of its officers would have been a breach of trust and unlawful. Crampton v. Zabriskie, 101 U. S., 601; Mayor & City Council of Bal-

timore v. Gill, 31 Md., 375; Merrill v. Plainfield, 45 N. H., 126; Terrett v. Town of Sharon, 34 Conn., 105; Hooper v. Ely, 46 Mo., 505.

Thus it will be observed, that we rest our conclusions as to the invalidity of the contract and the consequent want of authority and breach of duty on the part of the officials in paying or delivering the funds of the city thereon, upon the fact that such contract attempted to impose a "debt" upon the city, without at the same time making provision for interest and sinking fund, and not upon the fact that at the date of such contract the city had already exceeded its bond limit. Our conclusions being reached independent of this fact we leave it out of the case, as it could not, in any event, lead to a different result.

We do not wish to be understood as intimating that a contract for public improvements providing for payment in bonds of the city to be thereafter issued and delivered, due provisions being made for interest and sinking fund on such bonds at the date of said contract, in fact everything being done necessary to a definite legal appropriation thereto of so much of the city's taxing and debt-creating power as is represented by such bonds, the mere printing, signing and delivery thereof being postponed until needed in payment of the work, would be void. In such a case the bonds when delivered would probably relate back to and be based upon the orders entered at the date of such contract, and the authorities, in estimating the amount of indebtedness of the city at any time after such date, would consider the bonds thus provided for as an incurred debt. Bassett v. City of El Paso, 88 Texas, 168. We express no opinion, however, upon the question, as it is not contended that there was any such provision made for the bonds at the date of the contract before us, and clearly there was nothing to prevent the city, if it had not reached its bond limit before the making of the contract, to thereafter issue other bonds to its full limit, thus leaving this contract, if valid, a pecuniary obligation or debt against it in excess of the amount permitted by law.

Since the payment of the money and delivery of the bonds would have been a breach of trust and unlawful, the guaranty of Allyn, which was intended to insure such payment and delivery, tended to bring about the doing of an unlawful thing, is tainted with the illegality of the original contract, and is void. "When the law imposes restrictions upon public officers, any contract which grows out of an evasion of such restrictions, or which, if enforced, would encourage such evasion, is void." Greenhood Pub. Pol. Rule, 370. We therefore answer the question above copied in the negative and deem it unnecessary to answer the others certified.