SAYLES et al. v. CITY OF ABILENE.
(No. 8742.)

(Court of Civil Appeals of Texas. Ft. Worth. June 2, 1917. On Motion for Rehearing, July 2, 1917.)

1. MUNICIPAL CORPORATIONS ⬅288(2)—PUBLIC IMPROVEMENTS — STREETS — POWER TO CONTRACT INDEBTEDNESS.

Const. art. 11, § 5, providing that no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent. thereon, and Abilene Charter, art. 4, § 4, to the same effect, do not prohibit the city's contracting for repairs to or for permanent improvements of streets, the same to be paid for at completion out of the available funds then on hand.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 759, 761.]

2. MUNICIPAL CORPORATIONS ⬅993(2)—RESTRAINING IMPROVEMENTS—RIGHT TO REMEDY—DAMAGES—NECESSITY.

To enable property owners to enjoin performance of an alleged illegal contract of the city for paving a street, they must show that the performance would injuriously affect them, and that they have no adequate protection at law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2159.]

On Motion for Rehearing.

3. MUNICIPAL CORPORATIONS ⬅1000(5)—RESTRAINING IMPROVEMENTS—PLEADING—DAMAGES—NECESSITY.

In suit to enjoin street paving by city, the taxpayers' allegation that the cost to the city, which is in truth and in fact a cost to the taxpayers, of the contemplated paving, would be a certain amount, is not subject to the necessary construction that the taxes of the petitioners would be increased, and the bill is therefore insufficient.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2170, 2171.]

4. MUNICIPAL CORPORATIONS ⬅993(2) — RESTRAINING IMPROVEMENTS—RIGHT TO REMEDY—DAMAGES.

In property owner's suit to restrain paving of street and alley intersections by the city at the cost of the city, it is immaterial that after the whole improvement, which included paving between the streets, was consummated, the petitioners would be charged with the cost therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2159.]

Appeal from District Court, Taylor County; Joe Burkett, Judge.

Injunction by Hattie Sayles and others against the City of Abilene. From an order dissolving the temporary injunction, plaintiffs appeal. Affirmed. On motion for rehearing. Motion overruled.

Sayles & Sayles, of Abilene, for appellants. Hickman & Whitten, of Abilene, for appellee.

BUCK, J. This is a suit to enjoin the city of Abilene from performing a pavement contract. Plaintiffs alleged that they were the owners of 140 feet abutting on the section of the street sought to be paved by the city, and that under the resolution and ordinance providing for such pavement, and under the custom prevailing in said city of Abilene with reference to paving, it was intended and contemplated that the intersections of the street planned to be paved with another street and an alley should be paid for by the city; that such paving constituted a permanent improvement, and that the city had no funds with which to pay for such improvements, and had not, by ordinance or otherwise, provided for the payment of the indebtedness thus to be created; that under the statutes and the Constitution of the state, and under the special charter granted by the Legislature, the city could not lawfully create a debt for such purposes without having first provided for the payment thereof.

Defendant answered by general demurrer and special exceptions, by general denial, and by the special denial of the allegation of the plaintiff that it was proposing or contemplating the creation of a debt, and alleged that the payment for such portion of the improvement as the city had promised to pay for and was contemplating paying for was to be made in cash immediately upon the completion of the work, and that the city had ample funds out of which such payment could be

lawfully and properly made. An appeal was taken by plaintiffs from an order of the court dissolving the temporary injunction theretofore granted.

Briefly, giving full effect, as it is our duty to do, to the testimony in favor of the judgment, the evidence shows that the fiscal year of 1916–17 began May 1, 1916, at 12:01 a. m.; that the total assessed valuation of all property within the limits of the city of Abilene was $6,000,000; that the city by its charter is authorized to levy and collect for all purposes a tax not to exceed $1.60 on every $100 assessed valuation; that it is authorized to levy and collect a tax not to exceed 25 cents on the $100 valuation for the purpose of making permanent street improvements and in providing for the interest and sinking funds of the bonds of said city for such purposes; that by ordinance the city had levied a tax for all purposes of $1.41 on each $100 valuation, out of which it had provided 40 cents for current expenses, 15 cents for the support and maintenance of the roads, streets, and bridges within the city limits, and 10 cents for the permanent improvement of the streets and highways within said city. It was also authorized to levy and collect a poll tax of $1 upon each citizen not exempt therefrom for said last-named purpose. By resolution dated January 11, 1917, the board of commissioners of said city had provided for the paving of North Second street from the east line of Walnut street to the east line of Pine street with asphalt macadam, the cost of the paving of the intersections, one street and one alley, to be paid for by the city, the balance to be adjudged against the abutting property owners. The payment by the city for said paving was to be made on estimates furnished by the city engineer, 15 per cent. of each estimate to be held back until the completion of the work and its acceptance by the city. By resolution of same date the city adopted the specifications prepared by the city engineer and ordered advertisements for sealed bids. On January 27, 1917, the bid of W. W. Middleton for the paving at $1.18½ per square yard was accepted, and the contract was authorized. On the same date a resolution was passed providing for notice to abutting property owners; the date of the hearing being set for March 1, 1917. Notice under this resolution was given petitioners January 29, 1917. Petition for injunction was filed February 10, 1917. The intersections which the city agreed to pave measured 540 square yards, at the agreed price amounting to $639.90. On January 11, 1917, there was an overdraft against the permanent street improvement fund of $5,615.59, and there was an outstanding note against this fund of $1,187. About 7 per cent. of the 1916 taxes remained delinquent at the time of the trial, February 26, 1917. A note for $87.50 was payable to the city for the benefit of this fund. At the time of the trial the overdraft against this fund had been reduced by the collection of taxes, etc., to $1,759.92. As to the general fund for the payment of current expenses, on January 11, 1917, there was an overdraft of approximately $6,500. The balance to the credit of this fund at the time of the trial was $7,397.31. This change occurred by reason of the collection of taxes, payment of fines, etc. There were two permanent improvement bond funds to take care of two issues of bonds. Each showed a balance sufficient to take care of the interest and sinking fund provided for in the issuance of the bonds. The delinquent taxes due from 1911 to 1916, inclusive, amounted to $1,090.08. The balance on hand January 11, 1911, to the credit of the street and bridge fund, by which term the funds appropriated for current repairs was designated, was some $1,150, and at the time of the trial it was $7,727.94. The contract price for the entire paving amounted to $2,500, of which Taylor county had agreed to pay, but had not paid at the time of the trial, the sum of $1,000. This amount, when paid, was to be credited to the permanent improvement fund.

Though we have recited the substance of all the evidence introduced, yet we are of the opinion that much of it has no bearing upon the issues presented in this appeal. Plaintiff below alleged that, if the contract for paving was permitted to be performed, a debt would be created to pay which no provision has been made by the city at the time of the making of the contract, and no tax levied or fund set apart for that purpose; that hence such debt would become a charge against the petitioners and the other taxpayers of the city of Abilene. This allegation seems to be the only one relied upon by plaintiffs as a ground for invoking the equitable powers of the court. But the evidence fails to show any immediate intention, or even remote purpose, of the board of commissioners of the city of Abilene to increase the rate of taxation in order to provide funds with which to pay for the paving for which contract had been made; indeed, the record contains no evidence to support this allegation. In fact, the whole trend of the defendant's evidence is to the effect that no such steps would be made necessary by reason of the contract made for the obligation created. On the contrary, it was attempted to be shown, and we are not prepared to say that the attempt was not successful, that ample funds were available for this purpose.

[1] The inhibition in article 11, § 5, of the state Constitution, to the effect that "no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon," and a similar inhibition in article 4, § 4, of the charter of Abilene, do not, in our opinion, prohibit a city's contracting either for repairs to or

for permanent improvements of its streets, the same to be paid for at completion out of available funds then on hand.

[2] We do not feel justified in concluding that the commissioners of the city would not be authorized to pay for this paving out of the street and bridge fund, which showed at the date of the contract to have available funds to its credit of some $1,150. But, irrespective of the question as to whether or not there were funds available at the time of the contract, or which would be available upon the completion of the work, with which to pay for the paving covered by the contract, before the appellants could maintain their suit to enjoin the performance of an alleged illegal contract, they would have to show that the performance of the contract sought to be enjoined injuriously affected them, and that they had no adequate protection at law. Wood v. City of Victoria, 18 Tex. Civ. App. 573, 46 S. W. 284; Altgelt v. City of San Antonio, 81 Tex. 436, 17 S. W. 75, 13 L. R. A. 383; Waco Water & Light Co. v. City of Waco, 27 S. W. 675. This they failed to do.

For the reasons given, we do not think plaintiffs below brought themselves within the rule, and we conclude that the judgment of the trial court must be affirmed; and it is so ordered.

### On Motion for Rehearing.

Our attention is called to an evident error in our original opinion in the statement that:

"The contract price for the entire paving amounted to $2,500, of which Taylor county had agreed to pay, but had not paid at the time of the trial, the sum of $1,000."

The $2,500 charge was for the paving of Pine street, while the charge and debt, the incurring of which is sought to be enjoined in this suit, is for the paving of the intersection of North Second street and an alley lying between Pine street and Walnut street. But we do not think the mistake in the finding of fact noted is material to the disposition of the case, and we refer to it and correct it merely in the interest of accuracy.

We do not now take the position, nor did we mean to be so understood in our original opinion, that a taxpayer may not enjoin the officers of a municipal corporation from creating a debt against such municipality, without at the same time making a provision for the payment thereof, when necessary, by the levying of a tax sufficient to pay the interest and sinking fund. We are not disposed to question the soundness of the opinion in City of Austin v. McCall, 95 Tex. 565, 68 S. W. 791, and the other cases cited by appellant on this question. In the McCall Case the city of Austin had entered into a contract by ordinance duly passed with the Austin Water, Light & Power Company whereby said company was granted the privilege to furnish water to the city of Austin

for a period of 20 years at a specified annual charge. This contract was carried out by both parties for a number of years, when the city of Austin, having constructed a water and light plant of its own, refused to further comply with the terms of the contract theretofore made. Litigation followed, and judgments were obtained against the city by the water company. In settlement and compromise of the claims reduced to judgment and those that were still current, the city agreed to pay to the water company $175,000 in installments not to exceed $25,000 per annum, to be applied: (1) To the extinguishment of the interest for each year on the whole sum of the purchase price, judgments, and claims against the city; (2) to the payment of principal and interest of the judgments and claims of the water and light company against the city; and (3) to the payment of the purchase price of the plant. John D. McCall, a citizen and taxpayer of Austin, obtained an injunction enjoining the city of Austin and its mayor and council from making the purchase under said contract. It does not appear from the opinion of the Supreme Court, nor from the opinion of the Court of Civil Appeals, reported in 67 S. W. 192, whether applicant alleged that by means of this purchase his taxes would be increased or not, but it does appear that the indebtedness thus proposed to be created would extend over a period of years, and that the funds available for this purpose, under the city's charter provisions, were not sufficient to pay the interest and provide the necessary sinking fund.

[3] The case at bar is materially different in this respect, in that it is shown that it was the purpose and intention of the city of Abilene to pay for this paving in part during its progress and in whole upon its completion. There was no deferred debt contemplated or necessitated. Appellants, while they alleged in their petition that they were property owning taxpayers in the city of Abilene, did not allege, as we interpret their petition, that the taxes on their property would be increased by reason of the consummation of the contract sought to be enjoined. The nearest approach to such an allegation is the statement:

"That the cost to the defendant city (which is in truth and in fact a cost to its taxpayers) of the contemplated paving of North Second street for the approximate 540 square yards contemplated to be paid for by defendant city will be something over $600."

We do not think this averment is subject to the necessary construction that by reason of the consummation of the said contract the taxes of petitioners would be increased, nor do we think the evidence sustains such a conclusion.

[4] The fact that appellants, under the ordinance providing for the paving of North Second street, would have assessed against their property abutting on said street the

charge for such paving, would in our opinion be immaterial to any issue presented on this appeal. There ,was no effort made to enjoin the city from making the general contract as to the paving of North Second street, but only as to this intersection, and no part of the cost of the paving of the intersection was it alleged in the petition was contemplated by the city to be assessed against appellants, or their property. They own no property abutting on this portion of the street involved. It may be that the real objection to the consummation of the paving contract was that, as an incident thereto, a charge would be made against the property of appellants abutting on North Second street, but only so much of such general contract is involved in this case as was provided for in the pavement of the intersection, and only as to the legality of this portion of the contract are we called upon or authorized to determine. We make this statement in view of the claim urged in this motion that appellants alleged in their petition that a charge would be made against their property abutting on North Second street for the paving in front thereof, and that by reason of such averment they disclosed that they would be injuriously affected by the consummation of the contract sought to be enjoined.

Appellants in their brief cite us to the cases of Howard v. Smith, 91 Tex. 8, 38 S. W. 15, City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552, and Pendleton v. Ferguson, 99 Tex. 296, 89 S. W 758, as authority in support of the contention that, inasmuch as the improvement here involved was shown by the testimony of the city engineer to be in the nature of a permanent improvement of the street, the city commissioners of Abilene would not be authorized to use any portion of the general fund, or any part of the street and bridge fund, the fund for current repairs of streets and bridges, for the payment of the paving of this intersection. In the Howard v. Smith Case the contract sought to be enjoined involved the issuance of 30-year bonds, and no provision was made for the interest or sinking fund. Under the final contract between the city of Corsicana and the contractor, Howard, it was agreed that Howard would do further paving in the city of Corsicana, and that the city—

"at the expiration of six months after said work is completed　*　*　*　shall issue 5 per cent. 30-year bonds, and deliver to the said Howard for the amount then due the said Howard by notes or in cash on said contract."

One Allyn, at the foot of this agreement, signed the following:

"I obligate myself that the above agreement will be faithfully carried out."

The question before the Supreme Court was as to the validity of the guaranty of Allyn that the city of Corsicana would carry ,out the terms of its agreement to issue the bonds. Such certified question was stated in the following language:

"Did the guaranty of the contract in which the city agreed to issue its bonds in payment for street improvements, which all the parties then knew it had no legal power to do, bind the guarantor to pay the debt for such street improvements which was agreed to be paid in such bonds of the city?"

The Supreme Court answered the question in the negative, and any language used or statements. contained in the opinion of the Supreme Court in answer to the question certified must be construed in the light of the question presented to said court.

The issue in City of Austin v. Cahill, supra, was also presented to the Supreme Court on certified questions, ,which questions involved the issue of necessary parties to a mandamus · proceeding in the lower court to enforce payment by the city of Austin of alleged indebtedness, partly reduced to judgment, claimed to be due plaintiff below for interest accruing on certain water and light bonds issued by the city. The Supreme Court held in that case that the legislative intent, as shown in the charter granted to the city of Austin (Special Laws 27th Leg. 1st Called Sess., p. 12, c. 4) was to provide for levy to pay the refunding bonds, but to leave power in the city to make another and additional levy to pay such bonds as might remain unrefunded. In the course of the opinion it is said:

"It may be true, for example, that it is sometimes competent in administrative matters, no statutory inhibition existing, to apply a tax professedly raised for one purpose to some other legitimate purpose. Long v. Richmond County, 76 N. C. 273, 280. But this can give no sort of warrant to divert a fund arising from a tax levied by special authority from the Legislature, when that fund is made part of a contractual obligation running beneficially to a particular class."

From a review of this opinion it is evident to our mind that the Supreme Court did not hold or intend to hold that a city was not authorized to pay out of its general fund items of trivial expense, even though connected with and an incident to a contract involving a street improvement, which in its nature and as a whole might properly be termed permanent, when it did not appear that the vested rights of any bondholders or creditors would be injuriously affected, and it further failed to appear that the moneys available to such general fund ,were insufficient to pay and provide for the current expenses of the city government, and also pay such item of special expense.

In Pendleton v. Ferguson, supra, the Supreme Court says:

"We think that the holder of a claim against a city which has accrued as a part of the current expenses of a particular year after the current expense fund of that year has been exhausted becomes a general creditor."

In Sherman v. Shobe, 94 Tex. 126, 58 S. W. 949, 86 Am. St. Rep. 825, it is held that: "It is only upon the surplus of the general revenues of a county that remain after the cur-

rent expenses have been paid that a general creditor has a claim."

But, as before stated, there is no showing made here that the funds to the credit of the general fund were not sufficient to pay the current expenses for that fiscal year, and also pay for this paving. By the terms of Charter of the City of Abilene, c. 4, § 40, the board of commissioners are vested with the power to provide by ordinance and appropriate money from the available funds of said city to special funds for special purposes, and to make the same disbursable only for certain purposes. There is nothing in the record to show that by ordinance said board had ever so limited the expenditures of the funds to the credit of the street and bridge fund. So much of the ordinance as relates to this latter fund provides that the board of commissioners may levy and collect a tax of 15 cents on each $100 "for the support and maintenance of the roads, streets, and bridges of the city of Abilene." We think under this authority the pavement in question might properly be paid for out of such fund.

The motion for rehearing is overruled.