## DUNCAN G. CAMPBELL v. WILLIAM REEVES.

Where two parties agreed to run a horserace, and put up their notes for the amount of the bet as a security that the amount of the bet would be put in the hands of the stakeholder, and with the understanding that the notes should be redeemed next day by a deposit of the same amount of money in their stead, and neither party redeemed his note, but the stakeholder had agreed with one of the parties to put up the money for him, and had the money on the next day to put up, and the latter party only was present on the day appointed for the race, and galloped his horse over the track, whereupon the stakeholder handed him the note of the other party, upon which he brought this suit, it was held that the plaintiff was not entitled to recover.

See this case as to what contracts are subsidiary to wagers on a horserace, in such a sense as to render them valid and binding.

Error from Walker. This action was brought by the defendant in error, on a note for two hundred dollars, given by one William Watkins and the plaintiff in error, Duncan G. Campell, as his security. Watkins did not appear, and judgment was taken against him by default; but the surety, Campbell, appeared and pleaded that the note was without consideration. There were other pleas; but on exception they were stricken out.

Harvey Randolph, a witness, testified that William Watkins and William Reeves had agreed to run a horserace for two hundred dollars; that he was agreed upon as the stakeholder; that the parties each made a note of two hundred dollars and placed them in his hands as a security that the two hundred dollars would be put up in his hands the next day; that the notes were to be redeemed the next day by the money; that D. G. Campbell, the defendant, was only security on the note; that the witness had agreed with Reeves, to put the money up for him, but that he did not apprise Watkins of that fact. Witness had the money ready to put up the next day; but that Watkins did not put up the money; that the race was not run on the day

appointed, and the reason was that Watkins did not have the $200 ; that Reeves was engaged in putting his horse in keeping some four or five weeks after the bet and before the day of the race.

Roundstree swears that the horses were on the ground, but that the race was not run, Watkins failing to get the money. And Bowdrice swears that Reeves galloped his horse through the track and claimed the money.

*Yoakum & Branch*, for plaintiff in error. The question arises to what extent the Court will go in declaring contracts subsidiary and incident to the wagers themselves.

In the case of Kirkland v. Randon, the Court allow the recovery of money put up as a forfeit on a horserace, and base that recovery upon the time, charges and expenses necessarily incurred in preparation for the race. This, however, will not apply to an agreement to make ;a bet, especially to the case under consideration, when the time of fulfilment was the next day.

The defendant put up no money. True the stakeholder promised him he would lend the money, and had it ready. But there is no evidence that Watkins knew the fact. It was not communicated to him ; and further, there is no proof that Watkins was not ready the next day. Was it his duty to go to Randolph ? Suppose Randolph had handed Reeves' note to Watkins and he had brought this suit. Had he not performed as far as Reeves ?

*A. P. Wiley*, for defendant in error. Do the facts in proof amount to any defence in law against the recovery upon the note ? This, it is believed, is no longer an open question in this Court. In the Case of Kirkland v. Randon this Court say "that be the policy which supports the validity of wagers "on horseracing what it may, it must equally extend to and "sustain all contracts which are but subsidiary and incident to

"the wagers themselves." (8 Tex. R. 10.) That the mutual execution and deposit with the stakeholder, of notes as a security or pledge that the amount of the wager in money shall afterwards be put up by the parties in his hands, is a contract subsidiary and incident to the wager itself, is too plain a proposition to require argument or illustration in its support.

The intimation of this Court in the case of Crump v. Secrest, should have admonished the plaintiff in error not again to bring a case of this character before this Court; and to put a quietus upon all future controversies growing out of cases of like character, we hope that damages may be allowed as for a delay case. (See 9 Tex. R. 261.)

HEMPHILL, Ch. J. It appears that the note was not given to secure the wager on the race or the forfeit in the event of failure to run the race, but to secure the deposit by a particular day, of the amount bet, and which was several weeks before the day appointed for the race.

We have repeatedly decided that wagers on horseraces being valid contracts at Common Law, were recoverable; and in Kirkland v. Brown, (8 Tex. R. 10,) it was held that a contract to pay a forfeit in the event of failure to run a race was binding; that it was subsidiary to the principal contract and was based on the principle of compensation for the loss of time, and for the charges and expenses necessarily incurred in the preparation for a race.

But the cause of action in this case presents none of the meritorious considerations which give force to the contract for a forfeit. No loss or damage could have accrued to the plaintiff by the failure of the defendant to make the deposit. The deposit was to be on the next day after the bet, and it is not to be presumed that in the interval the plaintiff, if a man of ordinary prudence, would have incurred any expenditure; nor is it proven that such was the fact. The failure to deposit might have been and was good ground for the plaintiff to abandon the race, and it was his own folly and risk to persist in preparations after the

failure of the defendant to deposit, or in other words to complete the bet.

Whether, after such failure on the part of the defendant, the contract to run continued to subsist, and whether the wager could be recovered, (the race not having been run) are not of material import to the issue in this case ; for that is whether a pledge or a contract under a penalty, given or made on the day of the bet, that the money shall be deposited the next day, which was several weeks before the race, is valid and should be enforced. The appellee insists on its validity, on the ground of its being incidental to the main contract. But the mere fact of its having some connexion with, or its being made about the principal contract, is not sufficient. If so, those who engage in this species of gaming might indulge their capricious fancies in multiplying and diversifying their sub-contracts relative to the main wager, and then thrust them upon the Court to the great waste of its time, and to the vexation and oppression of parties who have real interests in litigation, which must be most seriously retarded if all the protean forms of the possible appendages to a gaming contract must be examined for approval or rejection by the Court. Here, for instance, is a contract for the deposit of money the next day ; that failed, and, as the plaintiff contends, the defendant immediately became liable. As the race was not to be run for several weeks, there might in the intervening time be a dozen contracts of the same description, in all of which the defendant might fail ; or the plaintiff might fail in some and the defendant in others ; so that each might have accumulated a respectable fortune in promissory notes before the day of the race, and it would not be material whether the race were run at all, the liability of the parties depending not on failure to run, but on failure to make the deposit.

The liability of the defendant, if any, was complete on the day of failure. But as the plaintiff appeared determined to have the race, let us suppose that on the day of the race the money had been advanced for the defendant, and that the race

had been run and won by him.   Here then would be a case in which the defendant would by winning the race have gained two hundred dollars, and the plaintiff would have also gained two hundred as a penalty on defendant for not putting up or completing the bet on a particular day.   The mode of acquisition by plaintiff would have decided advantages over that of defendant.   The money would pass to the former without a struggle, or the expenditure of time, money or labor ; to the latter it would be the result of sacrifice, of exertion and struggle.

But enough has been said to show that a contract will not be enforced merely because it has relation to a wager ; that a person cannot be mulct in one or several penalties on one or several agreements that he will deposit the amount of the bet on a particular day, or by a second contract that he will deposit with a particular person, and by a third that it shall be at a particular place.   These have some connection with the wager, but they are not ancillary or subsidiary in a just and proper sense ; nor can they claim the interposition of law.   No contract in relation to horseraces will be enforced, except the one for the main wager, and such as will substantially aid in carrying this into effect, or will give a reasonable compensation for failure to run the race.   As, for instance, contracts to contribute to the expenses of preparing the track or other necessary expeditures, &c.   But fanciful contracts to deposit the money at a particular time or place, or with a particular person, to be executed about or immediately after the bet, and in an amount equal to the bet itself, cannot claim the consideration and attention of a Court.   If the deposit of property or notes were to be substituted for the money in case of failure to raise the latter, the contract would be as valid as if the money were on deposit ; or where the contract to deposit was not to be executed until a distant day, and one which was nearly about the time of the race, then compensatory damages might be recovered for the breach.

Wagers on horseraces are not entitled to any peculiar favor.

They are allowed by the Common Law, and must therefore, together with all contracts fairly or justly subsidiary, be enforced. But such contracts cannot be permitted to ramify themselves into an indefinite number of branches remotely connected with the wager.

Such contracts are not properly subsidiary, and in any event they would be unjust, as they would be contracts to make a bet or a contract to make an executory contract, and the penalty equal to the amount of the bet itself in a case where no damages could have been suffered.

We are of opinion that the contract has no such consideration as would render it binding in law, and it is therefore ordered that the judgment be reversed and cause remanded.

Reversed and remanded.