## NATIONAL CITY BANK OF ST. LOUIS, MO., v. TAYLOR et al. (No. 3313.)

Court of Civil Appeals of Texas. Texarkana. March 24, 1927.

Rehearing Denied March 31, 1927.

**1. Guaranty ⬤➾36(3)—Agreement to guarantee notes, whether accepted or indorsed by debtor, included note transferred "without recourse."**

Where terms of guaranty agreement expressly stated purpose of guarantors to be to guarantee payment of all notes, acceptances, or other paper which have been or may be discounted for debtor, whether same be made, drawn, accepted, or indorsed by debtor, guaranty included note transferred for discount "without recourse."

**2. Principal and agent ⬤➾150(1)—Ordinarily, mere excess of authority of agent is defense peculiar to principal.**

Excess of authority of an agent is ordinarily a defense peculiar to the principal.

**3. Guaranty ⬤➾1—"Guaranty" is collateral and secondary contract to be answerable for payment of debt of another who himself remains liable.**

A "guaranty" is, in legal significance, a collateral and secondary contract to be answerable for the debt of another person who himself remains liable for his default.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guaranty.]

**4. Bills and notes ⬤➾452(1)—Maker's liability on note was not affected by officers of bank exceeding authority in transferring note for rediscount.**

Maker's promise to pay note when due was not affected by officers of payee bank exceeding authority in transferring note to another bank for rediscount, since it had nothing to do with consideration or promise to pay.

**5. Guaranty ⬤➾5—It is only where note is void for illegality that guaranty must fall with it.**

It is only where note or contract is void for illegality in fact or declared so by terms of law read into it that guaranty must fall with it.

**6. Guaranty ⬤➾5—Guaranty agreement to guarantee prompt payment direct to guarantee of note rediscounted to it, although payee bank's officer exceeded authority in transferring it, was lawful.**

It was not an unlawful agreement, inherent in itself, to guarantee to make prompt payment direct to guarantee of note rediscounted to it, even though payee bank's officer exceeded authority in method of transferring note to guarantee.

**7. Guaranty ⬤➾5—Guarantors' promise to pay note on default of maker, was not affected by exceeded authority of payee bank's officer in transferring note to guarantee.**

Guarantors' promise to pay on default of maker of note was in no wise affected by payee bank's officer exceeding authority in method of transferring note to guarantee.

**8. Bills and notes ⬤➾293—Lawful transfer "without recourse" imposes no obligation on payee to pay note.**

Lawful transfer of a note "without recourse" imposes no obligation upon payee to pay note.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Without Recourse.]

**9. Guaranty ⬤➾100—Debt against maker of note is not extinguished by guarantors' payment to guarantee, and guarantors' remedy of reimbursement exists.**

Where guarantors make payment of note to guarantee, debt against maker is not extinguished, and guarantors' remedy of reimbursement exists.

**10. Guaranty ⬤➾5—Where transfer of note by payee bank's officer to guarantee was ineffectual, guarantee was in position of bailee, who could assert claim against all persons except true owner.**

Where transfer of note by payee bank's officer to guarantee was ineffectual because he exceeded authority in method of transfer, guarantee was in position of holder of note, at least as bailee by operation of law, and as such could assert claim thereto against all persons except true owner.

**11. Guaranty ⬤➾27—Liability of guarantors is measured by agreement and cannot be extended by construction.**

Liability of guarantors is to be measured by their agreement, and is not to be extended by construction.

**12. Guaranty ⬤➾36(3)—Language of guaranty agreement held not to mean that guaranty obligation should be defeated by invalid transfer of notes from debtor to guarantee.**

Language of guaranty agreement to guarantee direct to guarantee prompt payment of all notes, acceptances, and other paper discounted for debtor by guarantee, irrespective of whether same be made, drawn, accepted, or indorsed by debtor, *held* not to show express or implied intention of parties that obligation of guaranty should be defeated by invalid transfer of notes.

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Guaranty ⬦➝36(3)—Parties, in agreeing to guarantee payment of notes rediscounted, were presumed to have known terms of statute relating to rediscounting notes and to have bound themselves with reference thereto (Rev. St. 1925, arts. 499, 528).**

Parties, in making guaranty agreement to guarantee payment of notes and other paper rediscounted by guarantee bank for debtor bank, were presumed to have known terms. of Rev. St. 1925, arts. 499, 528, relating to transfer and rediscounting of bills, and to have bound themselves with reference thereto.

**14. Guaranty ⬦➝92(1)—Whether note guarantors were sued on, which was made payable to debtor bank, was in fact note of debtor so as to be within guaranty was for jury.**

In suit against guarantors who had guaranteed payment of notes transferred to guarantee by debtor bank, whether note sued on, which was made payable to debtor bank was in fact. note of debtor bank so as to be within undertaking of guaranty, was question primarily for jury.

Appeal from District Court, Bowie County; R. J. Williams, Judge.

Action by the National City Bank of St. Louis, Mo., against Roy Taylor and others. From a judgment on an instructed verdict for plaintiff against defendant named and others, and in favor of certain other defendants, plaintiff appeals. Reversed and remanded.

. The National City Bank of St. Louis, Mo., brought the suit, seeking, as holder and owner of a certain promissory note to recover judgment upon the note according to its terms against Roy Taylor, Bessie D. Taylor, and E. D. Triggs, as makers, and also seeking, separately and apart from the action on the note, to recover against the other appellees, as guarantors, upon their alleged written guaranty of the prompt payment of the note when discounted for the payee by the plaintiff. As a defense, in avoidance of any liability, the guarantors specially pleaded to the effect that the note was a transaction, in origin and afterwards, wholly without the authority or consent of the board of directors, and was never in fact executed or delivered to the Guaranty State Bank, and never became its property or asset; that the board of directors and the guarantors were ignorant of the entire transaction until after the transfer of the note, and then the directors refused to ratify or consent thereto; that, if the execution of the note in the name of the bank as payee constituted it in effect a bank note, then the purported transfer of the note by the cashier to the plaintiff was void and of no effect, as an act in positive violation of the statute, being the individual act of an officer of the bank entirely without authority of the board of directors. By supplemental petition the plaintiff set up estoppel in reply to the defendants' answer. After all the evidence had been heard, the court peremptorily instructed the jury to return a verdict in favor of the plaintiff against the makers of the note for the amount sued for, and in favor of the defendants sued as guarantors thereof. A judgment was finally entered in keeping with the verdict. The plaintiff has appealed from the judgment as pertains to the alleged guarantors.

The written guaranty sued on, and which was admitted to have been executed and delivered by the appellees, except Taylor and wife, on March 31, 1922, is in the following words:

"Whereas the Guaranty State Bank, Texarkana, Tex., hereinafter called debtor, has applied to the National City Bank of St. Louis, Mo., for discounts, loans or credits:

"Now, for value received, and in consideration of $1 to each of the undersigned in hand paid, the receipt of which they hereby acknowledge, and other value considerations to them moving, the undersigned jointly and severally for themselves, their executors and administrators, hereby guarantee to said National City Bank of St. Louis, its successors and assigns, the prompt payment as they severally mature, of all loans heretofore made or which may be made to said the Guaranty State Bank, Texarkana, Tex., by said bank, and of all notes, acceptances, and other paper, which have been or may be discounted for the said debtor by said bank, whether the same be made, drawn, accepted, or indorsed by said debtor as well as any renewals thereof. This instrument is intended to be and is a continuing guaranty, and shall apply to and cover all loans and discounts and renewals so made by said bank prior to notice in writing given to the cashier of said bank at the office of said bank by one of the undersigned that he will not be liable upon any such loans or discounts made by said bank after the receipt of such written notice.

"Should any such loans, notes, acceptances, or other paper, or any renewals thereof, be not paid when due, the undersigned will, on demand and without notice of dishonor or protest, and without any notice having been given them previous to such demand of the acceptance by such bank of this guaranty and without any notice having been given to the undersigned guarantors, previous to such demand, of the making or renewing of any such loans or discounts, pay the amount due thereon to said bank, its successors and assigns, and it shall not be necessary for said bank, in order to enforce such payment, to first institute suit or exhaust its remedies against said debtor or other parties liable on such notes or other paper; and notice to the undersigned of the acceptance of this guaranty and of the making or renewing of such loans or paper, or any of them, is hereby expressly waived by the undersigned.

"Failure to demand payment, to give notice of nonpayment, to protest or give notice of protest to any one charged with the payment of any of said notes, acceptances, or other paper, is hereby waived by the undersigned.

"All paper discounted for all loans made to said debtor when paid shall be deemed to have been paid by said debtor, unless express notice

⬦➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in writing is given to said bank at the time, by said guarantors, that it has been paid by them.

"Executed this March 31, 1922."

The guaranty was not withdrawn or revoked at any time subsequent to its execution and delivery.

The National City Bank of St. Louis is a bank corporation with place of business in St. Louis, Mo. Mr. B. F. Edwards was its president and chief managing officer. The Guaranty State Bank of Texarkana was a state bank under the laws of Texas, with place of business in Texarkana, Tex. The appellees, except Taylor and wife constituted five of the seven authorized directors. This bank went into liquidation, being taken over by the state bank commissioner for insolvency in February, 1924. The present suit was filed June 3, 1925. As appears in the early part of 1922 there was commenced a special course of dealing between the two banks, which can be described by the following:

"The plaintiff bank had business transactions with the Guaranty State Bank of Texarkana, which business relations commenced about April of 1922. The relations were in the nature of city correspondent for the Guaranty State Bank of Texarkana and the Guaranty State Bank carrying balances with the National City Bank of St. Louis, and from time to time asking for accommodations in the way of loans and discounts from the National City Bank. Applications for loans and rediscounts, such as the Guaranty State Bank saw fit to make to the National City Bank, where brought before, and passed upon by, the discount committee, which met daily except Saturdays. There the bank borrowed on its own note, it put up bills receivable as collateral, and an individual guaranty of the directors was received, covering any paper handled for the bank. At various times we had bills receivable as collateral to the bank's notes, and had the individual guaranty of the directors covering all the bank's transactions."

On October 27, 1923, Roy Taylor, Bessie D. Taylor, and E. D. Trigg executed a note in the sum of $10,000 due six months after date, and payable to the order of the Guaranty State Bank of Texarkana, Tex., at the office of the Guaranty State Bank of Texarkana, Tex., with interest at the rate of 10 per cent. per annum from date until paid. E. D. Trigg was cashier and a director of the Guaranty State Bank. He was also one of the guarantors. The following indorsement appears on the note: "Without recourse. Guaranty State Bank of Texarkana, Texas, by E. D. Trigg, Cashier." This note from and since November 5, 1923, has been exclusively held and owned by the National City Bank of St. Louis, and is the one in suit. On November 5, 1923, the plaintiff bank placed in a special account in the name of the Guaranty State Bank of Texarkana the amount of the proceeds of the note less discount. Later, on November 24, 1923, the fund was transferred from the spe-cial account to the regular account of the Guaranty State Bank on the books of plaintiff bank. The execution and delivery of the note is admitted, as is also the fact that no part of the amount has been paid. The evidence is plain that the makers signed the note with the general intention to procure it to be discounted and money advanced on it in the form arranged, and the purpose was accomplished. An issue of fact, however, appears to arise as to whether by intention of all the parties, the note was taken by and in the name of the Guaranty State Bank as lender of the money, or was taken by and made payable to the National City Bank as lender in the name of the Guaranty State Bank as a mere formality. According to the testimony of the president of the plaintiff bank:

"The note in question was sent in by the Guaranty State Bank of Texarkana, Tex. Financial statement of Roy Taylor was furnished to the National City Bank of St Louis. The proceeds of the loan amounting to $9,699 were placed to the credit of the Guaranty State Bank of Texarkana. The proceeds of this note, together with other funds to the credit of the bank, were checked on by them from time to time. The guaranty was relied upon by the National City Bank as additional security on all paper handled for the Guaranty State Bank. The information received by the National City Bank was to the effect that the Guaranty State Bank had loaned to the borrower more than its legal limit and desired temporarily to relieve itself of the excess loan, with the understanding that it would be taken up when the payer had reduced the amount which the bank still held. It was anticipated that out of his crops for that year he would be able to pay about $10,000 of his indebtedness. If the Guaranty State Bank had not indorsed the note without recourse, it would have been held as an excess loan in violation of the statute. The note was taken in the regular course of business transactions between the two banks, but with the understanding previously stated. * * * It was not only understood that the note was held and owned by the Guaranty State Bank, but it was also stated that it made up an overloan to Roy Taylor. At the time of the rediscount of said note by the plaintiff bank, we had no int'mation that such rediscount was not in accordance with the authority of the officers and directors of the Guaranty State Bank. The transaction was handled with the Guaranty State Bank in the regular course of business, and by the same officers of the bank with whom we had been transacting business of such character. No negotiations were had with Mr. Roy Taylor or his wife in reference to the discount of the note for the Guaranty State Bank. Neither of the defendants has given notice in writing to the plaintiff bank or its cashier that he would not be liable on any loans or discounts made by the plaintiff bank to or for the Guaranty State Bank."

The cashier of the Guaranty State Bank testified, as material to state:

"I am familiar with the note involved in this case. I have known Mr. Edwards, president of

the National City Bank, since 1914. I have had various personal dealings with him previous to November, 1923; had dealings with him, both personally and in a banking capacity, since 1915. On a number of occasions I had borrowed money for Mr. Taylor, with my indorsement on his note. I never borrowed from him for me personally, but with Mr. Taylor's notes with my indorsement I had. I negotiated these loans through Mr. Edwards from Mr. Edwards' bank on behalf of Mr. Taylor, with my indorsement on his note. In a good many instances Mr. Shaw's indorsement was on the notes with me and Mr. Taylor. It would be impossible for me to remember definitely about how many loans had been negotiated by us of this kind from Mr. Edwards' bank on behalf of Mr. Taylor, or the amount of them. Previous to November, 1923, the loans varied from $2,000—one in 1920 was, I believe, $40,000—on behalf of Mr. Roy Taylor. * * * On the morning of October 25, 1923, I was in St. Louis and went to see Mr. Edwards in the National City Bank. I had told Mr. Taylor that I would go to Mr. Edwards for him personally and see if I could arrange for a loan for him. I was in conference with Mr. Edwards about 11:30 a. m. I told him that Mr. Taylor wanted a loan of $10,000 temporarily, and I wanted to know what arrangements he could make to handle it for me. Mr. Edwards suggested that we handle it as we had done before, that I take the note of Mr. Taylor indorsed by me. * * * In dealing with Mr. Edwards, I was not acting on behalf of the bank, but altogether for Roy Taylor, as we had done in a number of instances. We made the note on the form of the Guaranty State Bank rather than making it direct to the National City Bank, that it might have the security of Mr. Taylor's real estate which our bank held. It was my idea and Mr. Edwards' belief that to do it in that way would give them (the National City Bank) a lien along with the Guaranty State Bank in the mortgaged real estate. It was discussed from that standpoint. I did not do that in settlement of any indebtedness Roy Taylor owed our bank. The note never was in our bank, and Mr. Taylor never was indebted to our bank on that note."

A complete financial statement of Roy Taylor was furnished by the officers of the Guaranty State Bank to the plaintiff. Also a letter was received by the plaintiff bank, signed by the president of the Guaranty State Bank and addressed to the president of the plaintiff bank. The letter, dated November 3, 1923, reads:

"Dear Sir: Replying to your letter of the 1st inst., with reference to the note of Roy Taylor for $10,000 which you hold for discount for our bank 'without recourse,' will advise that we hold a mortgage on his personal property, also deed of trust on his 640 acres of land, securing all notes or obligations that he might owe to the bank. And will advise that this note is protected by said mortgage and deed of trust, although indorsed 'without recourse,' and would share in the proceeds of said property."

The writing and mailing of this letter was admitted as a fact. It was shown by the defendants, and there is no evidence to the contrary, that no one of the guarantors except Trigg and Shaw ever saw or knew of the note in question prior to November 24, 1923; that the note was never entered on the note or discount register or liability register of the state bank; that the note was never entered on the bank's books as an asset or note of the bank; that no loan of the date of the note to Mr. Taylor was authorized by the board of directors; that the taking of the note from Taylor was not authorized by the board of directors; that the transfer or discount of the note was never authorized, consented to, or ratified by the board of directors. All the guarantors testified substantially the same as Mr. Rodgers, whose evidence is quoted as follows:

"I was continuously a director of the Guaranty State Bank. * * * I signed the guaranty in suit. * * * As to this specific note, the board of directors of the Guaranty State Bank never authorized the transfer or negotiation or any one to negotiate, sell, indorse, or transfer that note, to the National City Bank of St. Louis. This note was never before the board of directors at any meeting, either to take it as an asset of the bank or to discount to any one or any bank. I know that from my own personal knowledge. There is no resolution in the minutes of the directors' meetings authorizing any officer of the bank or any one to sell, transfer, or indorse this note to the National City Bank or to any one else. The directors never requested nor required the note to be executed by Mr. Taylor, and it was not executed to the bank for any indebtedness authorized by the board. I first knew that the note had been executed and purported to have been indorsed by the Guaranty State Bank to the National City Bank from a letter about November 24, 1923. I saw the letter as soon as it reached Texarkana. After I found out about the letter, I went at once to the directors. We called a directors' meeting. We met in the directors' room, six of the seven of us there. All of us were there except one. We brought the matter of the note up, objected to it entirely, and refused to ratify any of the transaction, and refused to permit the bank's interest in any way to be thereby affected. Mr. Shaw, our president, who had written the letter to the president of the National City Bank, was instructed to write to the president and tell him that the directors were not willing for this note to share in our collateral or rest upon our responsibility. I don't know whether Mr. Shaw did so or not."

It does not appear that Mr. Shaw sent the notice requested by the directors to the National City Bank. The fact is fully established that the guarantors, except Shaw and Trigg, were ignorant of the entire transaction until November 24, 1923.

At the time the note was discounted by the plaintiff bank, there was on deposit in that bank to the credit of the Guaranty State Bank a balance of $43,488.99. A substantial balance remained in the plaintiff bank to the credit of the Guaranty State Bank during the

(293 S.W.)

months of November and December, 1923, and up to January 2, 1924. The balance stated, including the proceeds of the note, was checked out by the Guaranty State Bank in the usual course of business between the two banks. It does not appear that the proceeds of the note was credited upon Mr. Taylor's indebtedness to the Guaranty State Bank, but it does appear that the Guaranty State Bank received the proceeds of the note. The above are substantially the essential facts proven in the case, as material to the questions on appeal.

Arthus E. Simpson, of St. Louis, Mo., and Sid Crumpton, of Texarkana, for appellant.

Rodgers & Rodgers and Keeney & Dalby, all of Texarkana, for appellees.

LEVY, J. (after stating the facts as above). The court gave the defendants' and refused the plaintiff's requested peremptory instruction. Error is assigned upon the two rulings. Thus there are presented for our consideration the two questions: (1) Do the facts show an undertaking upon which a right of action could arise in favor of the plaintiff? and (2) If so, does the proof show such undertaking to be obligatory of performance, or not, upon the defendants? Each of these propositions is denied by the defendants. And it is of legal requirement that they both must be sustained by the proof in order to entitle the plaintiff bank to recover.

[1] In the facts before us the note for $10,000 was signed by the makers and drawn "payable to the order of the Guaranty State Bank of Texarkana, Tex."; the latter by its cashier indorsed it "without recourse" and delivered it to the National City Bank, which passed the proceeds less the discount upon its books as a credit in the name of the payee bank. And we can assume for present purposes, from the standpoint of a peremptory instruction, the full fact to be that there was delivery and acceptance of the note at its inception, in the name of the Guaranty State Bank, and for its use and benefit as the true holder and payee, by the bank's officers. Then the note so drawn and discounted would be regarded as entirely and strictly within the class or description of notes covered by the terms of the guaranty, as being a note taken and held by the Guaranty State Bank as its property, and then "discounted for" the said bank by the plaintiff bank. As may be seen, the guaranty was an absolute, unconditional undertaking on the part of the guarantors, expressly stating the purpose and intentions of the guarantors to be to "guarantee" direct to the plaintiff bank "the prompt payment" of "all notes," acceptances, and other paper which have been or may be discounted for the said debtor (the Guaranty State Bank) by said bank (the plaintiff)," irrespective of "whether the same be made, drawn, accepted, or indorsed by the said Guaranty State Bank. The terms of guaranty would include, and

not exclude, a note transferred for discount "without recourse." And it is immaterial that the note was offered for discount and was discounted as a single transaction at a date subsequent to the time of the execution and delivery of the guaranty. As plainly expressed in the instrument, it was—

"intended to be and is a continuing guaranty, and shall apply to and cover all loans and discounts and renewals so made by said bank (the plaintiff) prior to notice in writing given to the cashier of said bank at the office of said bank by one of the undersigned that he will not be liable upon any such loans or discounts made by such bank after the receipt of such written notice."

The parties do not disagree that the written guaranty is legally classed as a continuing one. Gardner v. Watson, 76 Tex. 25, 13 S. W. 39; 28 C. J. p. 962; 12 R. C. L. p. 1061; 5 Elliott Co. § 3934. Therefore the facts go to show an undertaking and a transaction between the two banks upon which a right of action could arise against the guarantors in favor of the plaintiff bank.

[2, 3] There remains to be considered the question of whether or not the undertaking of guaranty was obligatory of performance in the circumstances. The guarantors insist that it was not because the transfer of the note by the officers of the bank was ultra vires, and void by positive provision of law, and the terms of the guaranty include only notes lawfully transferred for rediscount. As bearing upon this question, the full fact was shown that the board of directors of the Guaranty State Bank did not at the time authorize or consent to, by written record, the transfer, sale, or rediscount of the note. The directors, except two of them, were ignorant of the entire transaction until November 24, 1923, which was a time subsequent to the actual rediscount, but a time when the money remained to the credit of the Guaranty State Bank on the books of plaintiff bank. The statute expressly declares that "no officer or employee" of a state bank "shall have power to indorse, sell, pledge or hypothecate any note, bond or other obligation received by such corporation for money loaned, until such power and authority shall have been given such officer or employee by the board of directors in a regular meeting of the board, a written record of which proceeding shall have first been made upon the minutes of the corporation." Article 499, R. S. 1925. Also, "no bills shall ever be rediscounted by such bank [officers], except with the consent of the board of directors. Said consent to be a matter of record." Article 528, R. S. And undoubtedly the Guaranty State Bank in view of such facts and the law, were it a party to a suit based alone on the note, might successfully plead excess or lack of authority of its officers to transfer and rediscount the note. Hull v. Guaranty State Bank (Tex. Civ. App.)

270 S. W. 191; Farmers' State Bank & Trust Co. v. Central State Bank (Tex. Civ. App.) 281 S. W. 632; and other cases. But, as fully appears from the statute, the act of the officers of the Guaranty State Bank, in transferring the note for rediscount in excess of authority, was not a contract or act such as would not bind the said bank, even though authorized by the board of directors. It differs from the contract to do or the doing of an illegal act forbidden to be done at all or according to any method. If the officers executing the transfer had been regularly authorized by the directors, it would unquestionably have been a valid transfer. For that reason it would not follow as a necessary legal consequence, merely because the transfer of the note was ultra vires and void, that the guaranty sued upon would also fail of enforced performance. Ordinarily mere excess of authority of an agent is a defense peculiar to the principal. If the note survives the transfer and is binding upon the makers, the guarantors also remain liable for the performance of their obligation, unless the obligation of the guarantors provides that it should be defeated by invalid transfers. It is believed that there lies the stress of the question considered.

[4, 5] A guaranty of the kind in suit is, in legal significance, a collateral and secondary contract, to be answerable for the payment of some debt of another person, who himself remains liable for his default. It is not a contract, as of suretyship, primary and direct. In the present case, in no wise is legal liability on such debt on the part of the Guaranty State Bank a prerequisite to liability of the guarantors to the guarantee; and it is conclusive that the makers of the note in the present case remain liable for the note, notwithstanding there was an invalid transfer by the officers of the bank as against the bank itself. The makers' promise to pay, and to pay when due, is not affected in any wise with the exceeded authority of the bank officers to transfer the note for rediscount for the bank. It has nothing to do with the consideration or the promise to pay. And the note, for reasons inherent in itself, was not legally void and unenforceable against the makers, who stood first bound to pay it. It was in all respects a valid and legal note, which was genuinely executed by the makers, and did not belong to a class reprobated by public policy, or in violation of positive law, or against morality. As firmly settled, it is only where the note or contract is void for illegality, in fact or declared so by terms of law read into it, that the guaranty must fall with it, because the court will not enforce a guaranty upon a note or contract where the contract or note itself ought not to be enforced against any one. Howard v. Smith, 91 Tex. 8, 38 S. W. 15; Fuqua v. Brewing Co., 90 Tex. 298, 38 S. W. 29; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; 28 C. J. § 36, p.

909; 12 R. C. L. § 24, p. 1072; 2 Elliott Contracts, § 1094.

[6-10] The law will not lend its support to a claim founded upon its violation. Shelton v. Marshall, 16 Tex. 344; Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; 2 Elliott Contracts. §§ 645-650; Comstock v. Draper, 1 Mich. 481, 53 Am. Dec. 78. And it may be conceded that the courts, when it is permissible to do so, will read into a contract terms of an existing statute if by doing so a doubtful contract can be rendered legal rather than invalid. Trinity Portland Cement Co. v. Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483; 9 Cyc. 582. Yet collateral contracts are not necessarily void. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363; Campbell v. Reeves, 14 Tex. 8; 2 Elliott Contracts, § 677. Neither is it an unlawful agreement, inherent in itself, to guarantee to make "prompt payment" direct to the guarantee of a note rediscounted to him, although it be not transferred by the officer acting for the bank in accordance with the method prescribed for him to follow and adopt. No law forbids the obligation of guaranty of mere excess of authority in the way it is done. The law does not give the effect of illegality to it unless tainted with fraud. It is an agreement no more inherently unlawful than a contract as generally done, against loss by theft, robbery, or burglary. The guarantors' promise to pay on default of the maker of the note is in no wise affected with the exceeded authority of the bank officer. 2 Elliott on Contracts, § 1078. And the guarantors' burden is no more increased or varied by ineffectual transfer than by reason of lawful transfer "without recourse." There is like effect in both instances. A lawful transfer "without recourse" imposes no obligation upon the payee to pay the note. Neither does the ineffectual transfer operate to impose any legal obligation upon the payee on the note itself. In neither instance is the debt against the maker extinguished by the guarantors' payment to the guarantee, and the guarantors' remedy of reimbursement exists. Although the guarantee bank could not assert ownership in the note as against the true owner in virtue of the ineffectual transfer by the officers of the bank, yet until the transfer was set aside the guarantee was in the position of holder of the note, at least as a bailee, by operation of law, and as such bailee in position to assert claim thereto as against all persons except the true owner. 6 C. J. § 111, p. 1149. The guarantors could not bring into question in this suit such possession; no fraud of the guarantee being involved. Therefore the guarantee had some possessory right in the note, within the purview of the guaranty contract. And the note was mere evidence in this suit of what it purported to be, the debt of the makers. The

judgment in this case would be on the guarantee, and not in the name of the Guaranty State Bank. The Guaranty State Bank would not own or have any interest in such judgment.

[11, 12] We are therefore forced to look to the purposes and meaning of the guaranty as the parties might fairly and reasonably be expected mutually to understand. Cooper Gro. Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338; 28 C. J. p. 930. The leading purpose of the guaranty was in furtherence of and to promote generally the transfer and rediscount of notes and payment of the consideration in reliance on and upon faith of specially guaranteed security of prompt payment when due, in commercial intercourse between the two banks, located in different localities. There was unequal opportunity to the guarantee of knowing the responsibility of the makers of the note for prompt payment, and of having timely or actual personal knowledge of the meetings and actions of the board of directors, and of special authority given to officers of the transferring bank; and the guaranty may have been required and taken, as fairly seems, in mutual consent for those very reasons. The mutual purpose of requiring and executing the undertaking was evidently to make good "the prompt payment" of transferred notes against some possible default or event in the future, such as in the contemplation of the parties might hinder, delay, or defeat the payment of money paid out. The very terms manifest the intention of both parties to make the guaranty unambiguous that the National City Bank, without taking further steps or the performance of any condition precedent, might securely look to the guarantors for "the prompt payment" of any "note" immediately upon merely the default of the principal debtor, which might be rediscounted for the said Guaranty State Bank, irrespective of whether the same be made, drawn, accepted, or indorsed by the Guaranty State Bank. The element of suretyship or indorsement, so as to create some legal liability on the part of the Guaranty State Bank as a prerequisite to liability of the guarantors to make "prompt payment" is thus eliminated by the very terms of the instrument. There is no other condition or contingency suggested by the language used upon which prompt payment" is to be made, beyond or outside of the fact that it was to be immediately upon merely the default in such respect of the maker of the note. The liability for the principal debtor's ability to perform the act of making due payment at maturity of the note is the thing guaranteed, and the guarantors undertake that the principal debtor is able to do so. It is not a guarantee that the note is collectable by due course of law. Evans v. Bell, 45 Tex. 553; Texas City Improvement Co. v. Griswold (Tex. Civ. App.) 41 S. W. 513.

[13] The liability of the guarantors is to be measured by their agreement, and is not to be extended by construction. The extent of their obligation must be determined from the language used. And clearly the language used cannot be said to express or to imply intention of both parties that the obligation of guaranty should be defeated by invalid transfer of notes. The language does not even purport to cover only notes that are "lawfully transferred and discounted." On the contrary, the language used expresses the mutual purpose and intention to have the guaranty cover generally, without exception or qualification, "all notes" offered by the Guaranty State Bank "for discount." Simply adding the words, "lawfully transferred for discount," would have sufficiently disclosed such intention and purposes. The extent of the obligation not being in the least doubtful, the parties are presumed to have known the terms of the statute and to have bound themselves with reference thereto. 6 R. C. L. p. 855; Haugen v. Sundseth, 106 Minn. 129, 118 N. W. 666, 16 Ann. Cas. 259. It is not permissible to read therein any other condition than is already therein; the contract of guaranty being freely made by the guarantors and without any claim of fraud upon them in its inception. It is not perceived that any less effect can be ascribed by the courts to the terms of the guaranty than was mutually agreed to by the parties themselves.

[14] Having disposed of the two legal questions so vitally important in this case, we come now to consider whether or not any question of fact arises for decision primarily by the jury. After much deliberation we conclude that, upon considering the evidence to the extent it will bear, the court would not be authorized to say, as a pure matter of law, that it was the purpose and intention of all the parties to take and accept the note in the name of the Guaranty State Bank as lender of the money, and that it was not made payable to the National City Bank as lender by name of Guaranty State Bank as a mere formality. The evidence appears to differ as to which, and it is a decisive fact for ascertainment.

According to the evidence of the president of the plaintiff bank, the note was purely taken and accepted by the officers of the Guaranty State Bank as the lender, made payable to it as an act of the officers, and by the cashier transferred in the name of the bank to plaintiff bank for discount for the said payee bank. Such fact, if so found by the jury, would be regarded, in view of other circumstances, as a sufficient recognition or adoption of the note by the said bank to render it binding upon all the parties. But the evidence of the cashier of the Guaranty State Bank leaves it to be inferred that it was understood by all parties that he was acting for Mr. Taylor to secure a loan direct from the National City Bank, and that the note was made and taken in the form done as a formality; that the Guaranty

State Bank was not to be the lender or owner, or to advance money thereon. He said:

"In dealing with Mr. Edwards I was not acting on behalf of the bank, but altogether for Roy Taylor, as we had done in a number of instances. We made the note in the form of the Guaranty State Bank rather than making it direct to the National City Bank that it might have the security of Mr. Taylor's real estate, which our bank held. It was my idea and Mr. Edwards' belief that to do it that way would give them (the National City Bank) a lien along with the Guaranty State Bank in the mortgaged real estate. It was discussed from that standpoint. I did not do that in settlement of any indebtedness Roy Taylor owed our bank. The note never was in our bank, and Mr. Roy Taylor never was indebted to our bank on that note. * * * I have had various personal dealings with Mr. Edwards previous to this November, 1923. * * * It would be impossible for me to remember definitely about how many loans had been negotiated by us of this kind from Mr. Edwards' bank on behalf of Mr. Taylor."

However this evidence or the testimony as a whole may be regarded, an issue would arise primarily for the jury. The parties cannot, by any arrangement among themselves, affect the rights of the guarantors. Estoppel may be predicated against the Guaranty State Bank on such arrangement, if true, but not so against the guarantors, as in effect a legal fraud against them. If the note was not in fact the note of the Guaranty State Bank, then it was not within the undertaking of guaranty; otherwise it was, and the guarantors would be liable in this suit.

There is no other issuable fact presented in this record.

The judgment is accordingly reversed, and the case remanded for trial in accordance with this opinion.