**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**LITTLE JOE TRAWLERS, INC., etc., et
al., Defendants,**

**and**

**Enrique Rangel Salinas and Concha
Rangel Salinas,
Defendants-Appellees.**

No. 84–2678.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1985.

Rehearing Denied Dec. 11, 1985.

John Pedrick, Office of Gen. Counsel, Washington, D.C., Ruth L. Harris, U.S. Atty., Tyler, Tex., for plaintiff-appellant.

Garza & Garza, Reynaldo G. Garza, Jr., Brownsville, Tex., for defendants-appellees.

Before CLARK, Chief Judge, BROWN and GEE, Circuit Judges.

## OPINION

JOHN R. BROWN, Circuit Judge:

In this appeal, the United States asks us to overturn the District Court's decision and thereby enforce the promissory note executed by defendant Little Joe Trawlers, Inc. and guaranteed by defendants Enrique and Concha Salinas (Guarantors). After agreed proceedings before a magistrate, the District Court, adopting the magistrate's recommendation, granted Guarantors summary judgment. This was done on the ground that the United States failed to give Guarantors notice of intent to accelerate the maturity of the note. The judgment of the District Court was further grounded on the magistrate's ruling that the waiver of rights in the guaranty contract was not sufficiently specific to effect a waiver of the right to receive notice of intent to accelerate. We reverse the judgment of the District Court and hold that notice of intent to accelerate is not required to be given to a guarantor as opposed to a maker of an installment note. We further hold that the terms of the guaranty contract were so broad that Guarantors should be required to make good on their guarantee even if the right to notice did exist, and even if there was no specific waiver of this right in the contract. We therefore reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

## MONEY TO LEND

In 1977, with the help of the United States government (acting through the National Oceanic and Atmospheric Administration), Little Joe Trawlers, Inc. obtained a loan from the First State Bank of Aransas Pass, Texas (Bank). The money was used to purchase a fishing vessel. A lot of papers were executed. Little Joe executed a promissory note ("note one") to the Bank, which was guaranteed by the United States pursuant to Title 11 of the Merchant Marine Act. 46 U.S.C. §§ 1271 *et seq.* Little Joe then signed an additional promissory note ("note two") to the United States, agreeing to repay the government for any sums which the government would be required to pay the Bank on the loan (note one).[1] In response to the government's demand that Little Joe obtain guarantors for the payment of "note two" in case Little Joe failed to honor its obligation, Enrique and Concha Salinas executed a contract of guaranty, thereby agreeing to serve as guarantors for "note two" which was held by the government.

Little Joe eventually defaulted on its loan from the Bank and the Bank called on the government to make good on its guarantee. The government paid off the loan in full to the Bank and demanded payment of "note two" by Little Joe and Guarantors. It is undisputed that the government, prior to acceleration of "note two", did not give Little Joe or Guarantors notice of its intention to accelerate if the overdue payments were not made, and hence did not afford the opportunity for Little Joe or Guarantors to pay the past due installments.

## THE GUARANTY AGREEMENT

In paragraph 1 of the guaranty agreement, the Salinases unconditionally guaranteed the payment of all sums stated in "note two" to be payable to the government "regardless of whether [the Bank or the government] shall have taken any steps

1. The government argues in its brief that note two "sprang into life" when Little Joe defaulted on note one. However, an examination of the terms of note two indicates that Little Joe was

to pay off note two by making the payments to the Bank on note one. Thus, note two was a "live" note from the start.

to enforce any rights against [Little Joe] or any other person to collect such sums, or any part thereof, and regardless of any other condition or contingency."

The extremely broad agreement goes on to waive a number of rights, guaranteeing payment in virtually every conceivable situation. Paragraph 3 provided as follows:

3. The obligations, covenants, agreements and duties of the Guarantor under this Guaranty Agreement shall in no way be affected or impaired by reason of the happening from time to time of any of the following with respect to the Note or the Mortgage, although without notice or the further consent of the Guarantor:

\* \* \* \* \* \*

(c) the modification or amendment (whether material or otherwise) of any of the obligations of [Little Joe] or any of the Guarantor as set forth in either of such instruments;

(d) the doing or the omission of any of the acts referred to in either of such instruments;

(e) any failure, omission, or delay of [the Bank or the government] to enforce, assert, or exercise any right, power or remedy conferred on [the Bank or the government] in each of such instruments, or any action on the part of [the Bank or the government] granting indulgence or extension in any form whatsoever;

\* \* \* \* \* \*

(g) the release of [Little Joe] or the Guarantor or any of them from the performance or observance of any of the agreements, covenants, terms or conditions contained in either of such instruments by the operation of the law.

The Salinases also agreed in paragraph 8 to be endorsers of the note. Paragraph 8 provided:

8. The signature of the Guarantor is, in addition to and not in limitation of the foregoing, intended as and to have the effect of an endorsement of the Note by the Guarantor, who hereby waives presentment, demand of payment, protest and notice of nonpayment or dishonor, and of protest of the Note and any and all other notices and demands whatsoever.

The trial court focused on this latter paragraph in determining that the guarantors had not "waived" their right to receive notice of intent to accelerate because this right was not specifically mentioned in paragraph 8's waiver language.

## THE RIGHTS OF A GUARANTOR

█ The magistrate correctly found that the Salinases, as guarantors, occupied the status of primary obligors with respect to the note. *Hopkins v. First Nat. Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977). From this, he concluded that guarantors therefore enjoy all the rights and privileges of the maker of a note. Thus, since Texas law[2] clearly provides that a maker of a note is to be given notice of intent to accelerate maturity, *Allen Sales and Service Center, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.1975), the magistrate logi-

---

**2.** We sound a warning to future litigants in contract suits where the United States is a party that federal law governs the rights and duties of the United States on commercial paper. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). The rationale is, of course, a desire for uniformity of decision as the application of local law "would subject the rights and duties of the United States to exceptional uncertainty." 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838, 842. In this circuit, relying on *Clearfield Trust*, we have ruled that federal law governs a guaranty contract entered into by the United States. *First Nat. Bank, Henrietta v. Small Business Admin.*, 429 F.2d 280

(5th Cir.1970). The desire for uniformity of decisions was a factor in *Henrietta, id.* at 286, and it should be a factor in adjudicating the United States' rights in suits like this one, arising as a result of the government's role in facilitating loans under Title 11 of the Merchant Marine Act. However, the government did not plead, urge or argue below that federal law should be applied, the parties have briefed and argued Texas law throughout this litigation, and the trial court applied Texas law. Therefore, we will refrain from changing the rules in the middle of the game, and in doing so, we apply Texas law.

cally ruled that Guarantors had the right to receive such notice.

The magistrate's reasoning, adopted by the District Court, is at first glance appealing, but suffers from a faulty premise—that is, that guarantors, by virtue of their status as primary obligors, enjoy all the rights and privileges of the maker of a note. Texas law does not so provide and the proposition is simply not correct. Our analysis of guaranty law indicates that one of the maker's rights which does not also belong to a guarantor is the right to receive notice of intent to accelerate.

Although the Texas Supreme Court stated in *Hopkins* that a guarantor of payment is primarily liable, 551 S.W.2d at 345, the Court did not mean to imply that a guarantor has all the rights and privileges of a maker. Rather, the Court emphasized the "primary obligor" status of guarantors to support its ruling that a guarantor may be sued even though no action has been taken against the maker. *Id.* In other words, establishing the liability of a guarantor does not depend upon first establishing the liability of the maker. Thus, the entire discussion in *Hopkins* focuses upon the *obligations* of the guarantor and nowhere purports to equate his *rights* with those of the maker. Therefore, *Hopkins* does not support the magistrate's conclusion that a guarantor has all the rights and privileges of a maker.

An analysis of the liability of the guarantor *vis-a-vis* the liability of the maker clearly indicates that a guarantor does *not* step into the maker's shoes and thereby acquire all his rights and privileges. *See generally* Conner, *Enforcing Commercial Guaranties in Texas: Vanishing Limitations, Remaining Questions,* 12 Tex.Tech.L.Rev. 785, 817–827 (1981). While the *extent* of a guarantor's liability certainly does not exceed the maker's underlying obligation, the actual *liability* of the guarantor may exist even when the maker himself is not liable on the note. *Hopkins,* 551 S.W.2d at 345. In *Hopkins,* for example, the Court pointed out that a guarantor is liable on his guar-

anty of payment even when the maker's signature is a forgery, thereby releasing the supposed maker from liability. *Id., citing Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (Tex.1976).

A long line of Texas cases supplies the rule governing the liability of a guarantor *vis-a-vis* the liability of the maker. Generally, an unconditional guarantor is liable for payment even through the holder of the note cannot enforce the claim against the principal obligor (the maker), *unless* the claim against the principal obligor is void for illegality. *See, e.g., Houston Sash & Door Co. v. Heaner,* 577 S.W.2d 217 (Tex. 1979); *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (Tex.1976); *National City Bank v. Taylor,* 293 S.W. 613 (Tex.Civ.App.1927); *Fuqua v. Pabst Brewing Co.,* 90 Tex. 298, 38 S.W. 29 (1896); *Howard v. Smith,* 91 Tex. 8, 38 S.W. 15 (1896). *See also* Conner, *supra,* 12 Tex.Tech.L.Rev. at 824. Thus, the guarantor has been held liable even when the underlying obligation is unenforceable against the maker because the maker's signature was a forgery, *Bohart,* because the interest on the underlying debt violated Texas' usury laws, *Houston Sash,* because the maker's incurrence of the underlying debt was ultra vires, *Taylor,* and because the statute of limitations barred action against the maker. *Beddall v. Reader's Wholesale Distrib., Inc.,* 408 S.W.2d 237 (Tex.Civ.App.1966).

■ These cases demonstrate that a guarantor does not have the same rights and privileges as the maker of a note. It is a short step, if indeed any step at all, from the principle that a guarantor may be liable even when the maker is not to our finding that a guarantor does not have all the rights and privileges of the maker. It is this finding, which is exactly the opposite to the premise on which the magistrate relied, that leads us to our ultimate conclusion that Texas law does not require that notice of intent to accelerate be given to a guarantor.[3]

---

3. The guaranty contract also contained an endorsement provision. Endorsers are only sec-

Upon concluding that a guarantor does not have all the rights of a maker, it becomes necessary to examine exactly what rights a guarantor does or does not have. The Uniform Commercial Code expressly provides that a guarantor automatically waives presentment, notice of dishonor, and protest. Tex.Bus. & Com.Code Ann. § 3.416(e) (Vernon 1976). *See also* 9 Tex. Jur.3d, Bills and Notes, § 242. Furthermore, it is settled Texas law that, as a condition precedent to a guarantor's liability, notice of the maker's default must be given to a *conditional* guarantor but not to an *absolute* guarantor. *Ray v. Spencer*, 208 S.W.2d 103 (Tex.Civ.App.1947); 27 Tex. Jur.2d, Guaranty, § 51. The terms of "note two" indicate that the Salinases were absolute, unconditional guarantors. Although notice of the maker's default would be beneficial to an absolute guarantor, Texas' view is in accordance with the majority of other jurisdictions. *See, e.g., Merchants Mortg. Co. v. Bogan*, 434 F.2d 490 (D.C.Cir. 1970) (holding that an absolute guarantor has no right to notice of default under Maryland law); *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 273 N.W.2d 279 (1979); *Bowyer v. Clark Equipment Co.*, 171 Ind.App. 431, 357 N.E.2d 290 (1976); 38 C.J.S. Guaranty, § 63.

The parties in their briefs did not cite to any Texas case law dealing directly with the right of a guarantor to receive notice of intent to accelerate, and we were unable to find any. However, we believe that the current status of Texas law regarding notice of dishonor and notice of default supports our conclusion that a guarantor is not entitled to notice of intent to accelerate. While the three notices are different, they are at least similar with respect to the benefits conferred on someone who has guaranteed the payment of an installment note. Specifically, notice of the maker's default on an installment would allow the guarantor an opportunity to cure the default.[4] This "opportunity to cure" is what Guarantors claim they should have been given in this case.

Because notice of default serves essentially the same purpose with regard to a guarantor as notice of intent to accelerate, and because Texas law does not require a guarantor to receive notice of default, a similar conclusion is justified with respect to a guarantor's right to receive notice of intent to accelerate. The most recent commentary on Texas guaranty law is in accordance with our decision as it specifically states that a guarantor does not have the right to receive notice of intent to accelerate. *See* Conner, *supra*, 12 Tex.Tech.L. Rev. at 840. In our *Erie* role, we make no value judgments as to what Texas law ought to be; we hold only that Texas law as it currently exists does *not* require a guarantor to receive notice of intent to accelerate before he can be held liable for payment on the note. Therefore, the United States was under no obligation to notify Guarantors of its intent to accelerate the maturity of "note two". If Guarantors desired to receive notice of intent to accelerate and an opportunity to cure the maker's default, the contract of guaranty should have so provided.

## WAIVING ALL RIGHTS GOODBYE

Even if Texas law required a guarantor to receive notice of intent to accelerate, the guaranty contract in this case was so broad that Guarantors should

---

ondarily liable and as such have even less of an argument for receiving notice of intent to accelerate. However, in the event that an endorser also guarantees payment, his liability becomes *primary*, like that of a guarantor. Official Comment to Tex.Bus. & Com.Code Ann. § 3.416 (Vernon 1976); 9 Tex.Jur.3d, Bills and Notes, § 242. Thus, our discussion focuses on whether a *guarantor* has the right to receive notice of intent to accelerate. However, the fact that Guarantors also endorsed the note is some indication that the parties to the contract did not envision a situation where Guarantors would have all the rights of a maker.

**4.** This is the reason given by one court for requiring that notice of the maker's default on an installment note should be given to an endorser (as opposed to a guarantor)—i.e, so he can assume the periodic payments instead of being confronted with the entire unpaid obligation. *First National Bank of Ceredo v. Linn*, 282 S.E.2d 52 (W.Va.1981).

be required to make good on their guarantee even in the absence of such notice. The decision below is faulty because its focus on the waiver clause in paragraph 8 of the guaranty is much too narrow—it completely neglects the other provisions in the guaranty. The guaranty contract, when read in its entirety, renders it unnecessary to go into a lengthy analysis of waiver law; Guarantors have bound themselves on the face of the instrument to pay the United States even in the absence of a specific waiver. In other words, the guaranty instrument is so broad that it swallows up any right Guarantors may have to escape liability because of insufficient notice of intent to accelerate, even if they had a right to such notice, and even if they did not technically "waive" their right to this notice.

We emphasize first that the rights of guarantors must be determined from the language of the contract. *United States v. R & D One Stop Records, Inc.*, 661 F.2d 433, 434 (5th Cir.1981); *Mid-States General Agency, Inc. v. Bank of Texas*, 450 S.W.2d 428, 431 (Tex.Civ.App.1970). Moreover, the Court in *Mid-States* stated that all the language of the guaranty contract must be given effect whenever possible. 450 S.W.2d at 431. It is possible to do so here. The magistrate's narrow focus on waiver principles and paragraph 8 ignores paragraph 3(g) in the guaranty contract which expressly provides that Guarantors' obligations under the guaranty contract are to remain alive even in the event Little

Joe or Guarantors might be released from performance by operation of the law.[5] In other words, Guarantors, in effect, agreed to be bound by the guaranty instrument even if they were presented with a legal out. Therefore, even if we were to rule that the failure to receive notice of intent to accelerate excuses these guarantors from making good on their guarantee, Guarantors, in effect, said in the guaranty instrument, "No problem. We'll pay anyway." This type of guaranty contract provision has been given effect in other jurisdictions, *Black v. O'Haver*, 567 F.2d 361 (10th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978), and we see no reason to refuse to give it effect here.[6]

In a nutshell, we hold that Texas law does not require a guarantor to receive notice of intent to accelerate as a precondition to his liability on an installment note. In addition, we conclude that the terms of the guaranty instrument here are so sweeping that Guarantors are obligated to make good on their guarantee regardless of our outcome on the first issue. Therefore, we reverse the judgment of the District Court and remand for further proceedings not inconsistent with this opinion.

REVERSED.

---

5. Although we focus on paragraph 3(g) because we believe it constitutes Guarantors' broadest undertaking, a glance at a few of the other provisions in paragraph 3 reveals the sweeping nature of the guaranty contract. Subsection (c) allows the government to materially modify or amend any of Guarantors' obligations without notice to or further consent of Guarantors. Subsection (d) and (e) of paragraph 3 essentially constitute an undertaking by Guarantor to perform no matter what the government fails to do. This guaranty is as absolute and unconditional as a guaranty can be. The United States sought a guarantor who, no matter what the circumstances, would pay off "note two" if the United States was called on to pay "note one". The government found such a guarantor in the Salinases.

6. In *O'Haver*, the guarantors consented to liability notwithstanding "the release of the Borrower from performance or observance of any of the agreements, covenants, terms or conditions contained in [the Agreement and the Mortgage] by operation of law ..." 567 F.2d at 372. The Tenth Circuit enforced this provision despite the existence of an Oklahoma statute forbidding contractual provisions which restrict a party from enforcing his rights under the contract. The court ruled that the consent provision in the guaranty amounted to a guarantee of satisfaction in fact. *Id.* The court stated that the provision did not restrict the guarantors from enforcing their rights under the guaranty contract in contravention of the Oklahoma statute. Rather, the Tenth Circuit concluded, the provision *defined* those rights. *Id.*